James B. KING, Director, Office of Personnel Management, Petitioner,

v.

Raymond ALSTON, Respondent,

and

Merit Systems Protection Board, Respondent.

No. 95–3356.

United States Court of Appeals, Federal Circuit.

Feb. 1, 1996.

Hillary A. Stern, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., argued, for petitioner. With her on the brief, were Frank W. Hunger, Assistant Attorney General and David M. Cohen, Director. Of counsel were Lorraine Lewis, General Counsel and James E. Hicks, Office of the General Counsel, Office of Personnel Management, of Washington, D.C.

Calvin M. Morrow, Office of the General Counsel, Merit Systems Protection Board, Washington, D.C., argued, for respondent. With him on the brief, were Mary L. Jennings, Acting General Counsel and David C. Kane, Assistant General Counsel.

Before PLAGER, LOURIE, and CLEVENGER, Circuit Judges.

LOURIE, Circuit Judge.

Pursuant to 5 U.S.C. § 7703(d), the Director of the Office of Personnel Management (OPM) petitions for review of the final decision of the Merit Systems Protection Board, Docket No. AT0752900238–R–2, 62 M.S.P.R. 19, reversing the Department of the Navy's decision to place Raymond Alston on enforced leave after suspending his access to classified information. *Alston v. Department of Navy,* 62 M.S.P.R. 19 (1994). Because the board erred in determining that the agency denied Alston due process when it placed him on enforced leave, we reverse.

## BACKGROUND

Raymond Alston worked as an Instrument Mechanic for the Department of the Navy ("the agency") at the Charleston Naval Shipyard. His position required him to work in

restricted areas of the shipyard and to have access to classified documents. Accordingly, the agency required him to have a security clearance.

The agency has a two-part personnel security policy to maintain control over access to classified information. First, employees must have personnel security clearances, which are granted by a Central Adjudication Facility (CAF) after formal, often lengthy, background investigations. 32 C.F.R. § 154.41 (1995). Second, to manage more immediate needs for security, the agency determines which of those personnel holding security clearances needs to have access to classified information. *Id.* § 154.49. If the agency doubts an employee's ability to properly protect classified information, it may suspend that person's access. *Id.* § 154.55(c). In such a case, the CAF performs an independent determination as to whether to revoke that employee's clearance. *Id.* § 154.41.

On July 5, 1989, the agency temporarily suspended Alston's access to classified information and to restricted areas.[1] In a letter to Alston, the agency informed him that his access was temporarily suspended because "[he] may suffer from a medical condition which requires further investigation and evaluation." The agency did not identify any specific medical condition. Subsequently, because Alston no longer had access to his work site, the agency placed him on administrative leave.

On November 1, 1989, the agency proposed to place Alston on enforced leave, presumably without pay, pursuant to 5 U.S.C. §§ 7511–14 pending completion of an investigation and adjudication as to whether his security clearance should be revoked.[2] In its notice of the proposed action, the agency stated as follows:

1. This is a notice of proposed action to place you on enforced leave for such time as you are eligible for access to classified information. . . .

2. The specific circumstances supporting the proposed enforced leave are:

. . . .

b. The position you currently hold, Instrument Mechanic, WG–11, requires that you work and perform in nuclear controlled areas and have access to classified documents. Further, your position requires that you hold a security clearance with access to the controlled industrial area and other restricted areas of the shipyard.

c. On 5 July 1989, you were notified by the Administrative Officer that your access to classified information, the Controlled Industrial Area, as well as other restricted areas of the shipyard was being temporarily suspended pending further investigation and adjudication insofar as your security clearance was concerned.

. . . .

3. Eligibility for a security clearance is a condition of employment in your position at this Shipyard. Your services cannot be fully utilized without a clearance. You are not currently eligible to perform the duties for which you were hired due to the status of your security clearance. An effort has been made to locate a non-critical sensitive position in the Production Department which you could perform without a security clearance, however, none was found.

4. You are advised of your right to reply to this notice both orally and/or in writing, to submit affidavits and other documentary evidence in support of your reply, including medical documentation if you wish to have any medical condition considered

---

1. The procedures followed in suspending Alston's access, *see* 32 C.F.R. § 154.56, and the subsequent CAF evaluation concerning whether to revoke Alston's clearance are not at issue in this case. The only procedures at issue are those followed in placing Alston on enforced leave prior to the security clearance determination.

2. The agency presumably could also have acted pursuant to 5 U.S.C. § 7532. Under this section, an agency may take immediate action to suspend

an employee without pay if the agency considers the action necessary in the interest of national security. This section also permits an agency to remove a previously suspended employee, but only after the agency follows specific procedures prior to removal. *See* 5 U.S.C. § 7532(c) (1994) (providing an employee with notice, an opportunity to respond, a hearing, and a written decision by the head of the agency before removal).

which may have contributed to the reasons for this proposed action....

In response, Alston's attorney submitted medical documentation to the agency and met with them to discuss the proposed action. During this meeting, Alston's attorney discussed the possibility of placing Alston on disability or worker's compensation. Despite these discussions, the agency placed Alston on enforced leave on January 18, 1990 until such time as he became eligible for access to classified information. Alston appealed the agency decision to the board.[3]

In an initial decision, the administrative judge (AJ) reversed the agency action. The AJ held that the agency, when it placed Alston on enforced leave, did not act according to its own regulations. In particular, the AJ held that the agency failed to show that the placement of Alston on enforced leave promoted the efficiency of the service. The AJ further held that the agency failed to demonstrate that a lesser penalty could not have been imposed. The agency petitioned the board for review and the board affirmed the result of the AJ's decision, but used different reasoning. In its decision, the board held that the agency denied Alston his due process rights when it failed to provide him with an opportunity to reply to its notice concerning the suspension of his security clearance. *Alston v. Department of Navy*, 48 M.S.P.R. 694 (1991).

OPM petitioned the board for reconsideration. In a split decision on June 22, 1993, the board granted OPM's petition and reversed its previous decision. *Alston v. Department of Navy*, 58 M.S.P.R. 158 (1993). Relying on *Jones v. Department of Navy*, 978 F.2d 1223 (Fed.Cir.1992), the board held that constitutional due process rights do not attach to the suspension of an employee's access to classified information. Thus, the board found that Alston was not entitled to notice of the reasons for the agency's access determination prior to being placed on enforced leave. Accordingly, the board affirmed the agency's

decision to place Alston on enforced leave pending completion of its investigation.

After a change in the board's composition, the board reopened and reconsidered its June 22, 1993 decision. *See* 5 U.S.C. § 7701(e)(1)(B) (1994) (agency decision final unless the board reopens and reconsiders a case on its own motion). In another split decision, the board reversed its June 22, 1993 decision. *Alston v. Department of Navy*, 62 M.S.P.R. 19 (1994). The board held that Alston was denied meaningful due process under the Constitution, as well as the procedural protections to which he was entitled pursuant to 5 U.S.C. § 7513(b). The board based its decision on the agency's failure to provide adequate notice of the reasons for the suspension such that Alston had a meaningful opportunity to respond to the agency's action placing Alston on enforced leave. OPM now appeals.[4] *See* 5 U.S.C. § 7703(d) (1994) ("The Director of the Office of Personnel Management may obtain review of any final order or decision of the Board ... if the Director determines, in his discretion, that the Board erred interpreting a civil service law, rule or regulation affecting personnel management....").

## DISCUSSION

Our review of board decisions is limited by statute. We may set aside a board's decision only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1994).

■ OPM argues that the board erred when it reviewed the adequacy of the Navy's notice concerning his suspended access, asserting that pursuant to *Department of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), the board has no authority to review such suspensions. Moreover,

---

**3.** The board has jurisdiction over cases in which an agency places an employee on indefinite enforced leave. *Pittman v. Merit Sys. Protection Bd.*, 832 F.2d 598, 600 (Fed.Cir.1987) ("indefinite enforced leave is tantamount to depriving the worker of his job").

**4.** Alston was notified of the current appeal, but did not participate.

OPM asserts that an individual has no property or liberty interest in access to classified information. Thus, OPM argues that before placing Alston on enforced leave, the agency was merely required to inform him that his placement on enforced leave was based on the agency's decision to suspend his access to classified information. Because the agency informed him that it was a "medical condition" that required suspension of his access, OPM argues that Alston was accorded all the procedural protection to which he was entitled.

The board counters that it did not err because 5 U.S.C. § 7513(b) (1994) entitles an employee to advance notice of the specific reasons for an adverse action. The board does not dispute that it lacks authority to review suspensions of access to classified information. Nor does it disagree that an employee does not have a property or liberty interest in access to classified information. Instead, the board argues that notice of the reasons for an agency's decision to suspend access to classified information is required in order to provide an employee with a meaningful opportunity to be heard before his placement on enforced leave. Although we agree with the board that the agency must provide some indication of the reasons for an agency's decision to suspend access to classified information before placing an employee on enforced leave, we reverse the board's decision because in this case Alston was provided with all that he was entitled to under section 7513.

■ Although it is clear that no one has a "right" to a security clearance or access to classified information, *see Department of the Navy v. Egan,* 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), an employee, as defined by 5 U.S.C. § 7501, has a property right in his continued employment. *See* 5 U.S.C. § 7513(a) (1994) (agency may take an action under §§ 7511–14 against an employee only for such cause as will promote the efficiency of the service). *See also Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538–39,

105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (Ohio statute creates property interest in continued employment). An employee cannot be deprived of that interest without the procedural protections provided by 5 U.S.C. § 7513(b).[5] Section 7513(b) provides as follows:

> An employee against whom an action is proposed is entitled to—
>
> (1) at least 30 days' advance *written notice,* unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, *stating the specific reasons for the proposed action;*
>
> (2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;
>
> (3) be represented by an attorney or other representative; and
>
> (4) a written decision and the specific reasons therefor at the earliest practicable date.

5 U.S.C. § 7513(b) (1994) (emphasis added).

■ The language of the statute is clear. Prior to an adverse action, the agency must provide an employee with "written notice . . . stating the specific reasons for the proposed action." A notice of a proposed adverse action "is sufficient under [5 U.S.C. § 7513(b)(1)] when it apprises the employee of the nature of the charges 'in sufficient detail to allow the employee to make an informed reply.'" *Brook v. Corrado,* 999 F.2d 523, 526 (Fed.Cir.1993) (quoting *Brewer v. United States Postal Serv.,* 227 Ct.Cl. 276, 647 F.2d 1093, 1097 (1981), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982)).

■ Thus, section 7513(b) entitles an employee to notice of the reasons for the suspension of his access to classified information when that is the reason for placing the employee on enforced leave pending a decision on the employee's security clearance. Such

---

5. Notwithstanding the board's reference to the Constitution, neither party challenges whether the procedures provided under 5 U.S.C. § 7513(b) are constitutionally adequate under the Due Process Clause of the Fifth Amendment. We therefore consider only the question of statutory compliance.

notice provides the employee with an adequate opportunity to make a meaningful reply to the agency before being placed on enforced leave. Merely providing the employee with information that his access to classified information is being suspended, without more, does not provide the employee with sufficient information to make an informed reply to the agency before being placed on enforced leave.

■ Here, the agency provided Alston with sufficient notice to satisfy his statutory guarantees.[6] The agency notified him in a notice of "Suspension of Access to Classified Information" that his access was being suspended because of a potential medical condition. Moreover, in the agency's "Notice of Proposed Enforced Leave," the agency informed Alston that he was being placed on enforced leave based on the suspension of his access to classified information and that he had the right to reply, including the opportunity to "submit medical documentation if you wish to have any medical condition considered." Such notice provided Alston with sufficient information to permit him to make an informed reply to the agency's proposed decision to place him on enforced leave, and Alston does not assert otherwise. Alston was thus able to focus his response on his medical status, rather than to have to guess whether the agency's action was based on disloyalty, unreliability, or other possible ground for suspension of access to classified information. In fact, Alston did meet with agency officials and offered medical evidence, which the agency considered, before it decided to place him on enforced leave. Section 7513(b) does not require more procedural protection than that which was provided by the agency.

■ OPM argues that the Supreme Court's decision in *Department of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), deprives this court and the board of the power to review the agency's actions in suspending Alston's access. In *Egan*, the Supreme Court was faced with the "narrow question . . . whether the Merit Systems Protection Board (Board) has authority by statute to review the substance of an underlying decision to deny or revoke a security clearance in the course of reviewing an adverse action." *Id.* at 520, 108 S.Ct. at 820. The Court held that the board did not have such authority:

> The [Civil Service Reform Act of 1978] by its terms does not confer broad authority on the Board to review a security-clearance determination. . . . [T]he Board does have jurisdiction to review "adverse actions," a term, however, limited to a removal, a suspension for more than 14 days, a reduction in grade or pay, and a furlough of 30 days or less. §§ 7513(d), 7512. A denial of a security clearance is not such an "adverse action," and by its own force is not subject to Board review.

*Id.* at 530, 108 S.Ct. at 825–26. We agree with OPM that *Egan* precludes our court and the board from reviewing the substance of an agency decision to suspend access or to revoke a security clearance. *See Drumheller v. Department of Army*, 49 F.3d 1566, 1571 (Fed.Cir.1995) ("To the extent Drumheller's arguments go to the sufficiency of the evidence supporting the Army's decision to revoke her security clearance, the clear answer is that the MSPB does not have jurisdiction to review the merits of such a decision.").

However, OPM misconstrues what is at issue in this case. Neither this court nor the board is reviewing the merits of the agency's decision to suspend Alston's access to classified information. Nor are we reviewing the procedures the agency followed in denying such access. We are only determining that the agency provided Alston with the procedural protection guaranteed by 5 U.S.C. § 7513(b) when it placed him on enforced leave. *See Covington v. Department of Health and Human Servs.*, 750 F.2d 937, 944 (Fed.Cir.1984) ("Congress has charged the Board with the job of protecting the procedural rights of federal employees."). *Egan* does not foreclose board review of the procedures used by the agency in placing Alston on enforced leave. Although the action was

---

6. Before the board, Alston did not raise any due process concerns. In fact, Alston stipulated that the agency complied with all applicable procedural requirements when it temporarily suspended him.

based on the suspension of access to classified information, the agency was still required to comply with the statute, and in this case it did. *See Egan,* 484 U.S. at 530, 108 S.Ct. at 825–26 ("An employee who is removed for 'cause' under § 7513, when his required clearance is denied, is entitled to the several procedural protections specified in that statute.").

Nor is our decision inconsistent with our previous decision in *Jones v. Department of Navy,* 978 F.2d 1223 (Fed.Cir.1992). In *Jones,* we held that a federal employee has no liberty or property interest in access to classified information and therefore that no due process protection applies to a suspension of access to classified information. 978 F.2d at 1225. However, our decision in that case did not deal with the mandate of section 7513(b) when an agency places an employee on enforced leave. In *Jones,* the Navy informed two employees that they were being placed on enforced leave and their access to classified information suspended indefinitely pending an investigation into reports that the employees possessed and used cocaine. *Id.* The agency further provided the employees with an opportunity to reply. Moreover, the employees stipulated that the Navy provided them with the procedural rights required by law. *Id.* at 1224–25. Thus, the employees in *Jones* did not challenge and we did not address whether the employees were provided with the statutory procedures required by 5 U.S.C. § 7513(b).

## CONCLUSION

Although the board may not review the substantive reasons for a suspension of access to classified information when an employee is placed on enforced leave, it still must ensure that the agency provides the statutory procedural protections guaranteed by 5 U.S.C. § 7513(b). In this case, the agency provided Alston with all the process required by law. Therefore, we hold that the board's decision to the contrary was in error.

*REVERSED.*