MCKINNEY, Chief Judge,
dissenting.
This case illustrates the tension that exists between security clearance determinations, which are not reviewable by the Board or the court, and adverse employment actions governed by 5 U.S.C. § 7513, a situation that implicates due process concerns. The issue before the court is whether Cheney received the statutory procedural protections mandated by § 7513, specifically whether Cheney received sufficient notice of the reasons for his proposed employment suspension so that he had a meaningful opportunity to respond to the proposal. Because I believe that application of the narrow standard of review to the circumstances of this case compels a conclusion that the minimal requirements of due process were satisfied, I respectfully dissent.
I. BACKGROUND
While the majority has noted many of the facts necessary for consideration of this case, the following additional facts provide a more complete context for understanding the parties’ contentions:
Shortly after Cheney was notified that he was being placed on limited duty because of an ongoing investigation, the local print and broadcast media ran stories about the allegations against Cheney, referencing in particular his use of the criminal database. Cheney complained about the media stories to the DOJ. After the media reported on the allegations against Cheney, two investigators from the Office of Professional Responsibility (“OPR”) interviewed Cheney.
After Cheney received the September 22, 2004, letter from his supervisor, John P. Gilbride (“Gilbride”), proposing an indefinite suspension from employment, Cheney requested a thirty-day extension of time to respond to the notice of suspension of his employment. Cheney was granted an extension until November 8, 2004, to submit his written response to the proposed employment suspension.
On October 4, 2004, HRM Consulting, Inc. (“HRM”) wrote a letter on Cheney’s behalf that was copied to Johnson. In that letter, HRM expressed that Cheney “has not received any information which identifies the basis of allegations nor does he have substantive factual information which supports the reasons of the investigation.” HRM requested that supporting documentation be provided to Cheney.
Between October 19 and October 29, 2004, Cheney and his counsel wrote multiple letters attempting to obtain the evidence underlying the agency’s reasons for suspending Cheney’s security clearance. Specifically, those letters requested “detailed information relative to the suspension of [Cheney’s] security clearance;” requested “the information and evidence relied upon to revoke [Cheney’s] security clearance;” and inquired about the existence of “any material relied upon to propose the indefinite suspension,” requesting copies of the same.
On November 8, 2004, Cheney’s counsel submitted a written response to the proposed employment suspension on Cheney’s behalf. Counsel urged that the proposed indefinite suspension be rescinded because there was “a lack of a preponderant evidence showing that the indefinite suspension ... will ... promote the efficiency of the Drug Enforcement Administration.” Counsel further requested and reserved the right for Cheney to respond orally to the charges against him at a later date. Counsel then argued that Cheney had not been afforded “minimal due process” because Cheney had never been given notice *1355 of or been questioned about the “derogatory information” the agency had obtained that caused it to suspend Cheney’s security clearance. Counsel noted the efforts by both Cheney and his office to determine “what scrap of information; what bit of evidence, has been utilized by the Agency to suspend” Cheney’s security clearance and the inability to obtain those “materials.” Counsel concluded his letter by repeating his request that the agency rescind its proposed employment suspension.
On January 4, 2005, HRM wrote a letter on Cheney’s behalf to the deciding official to express its disappointment with the deciding official’s conclusion that Cheney should be indefinitely suspended. HRM noted that Cheney had authority to sign subpoenas and to cause the criminal databases to be queried as part of his duties to investigate criminal activity, and it posited that this could occur thousands of time on a yearly basis. Acknowledging that it would be illegal to use the databases for anything other than law enforcement purposes, HRM denied that Cheney had ever conducted a database inquiry check, claiming that Cheney did not even have a password for accessing the system. Indeed, HRM suggested that the allegations against Cheney could be the result of a disgruntled subordinate. Therefore, HRM requested detailed information about who had accessed the system so that Cheney could review this information because it could “identify the individual(s) who [had] inappropriately queried the database.” HRM asserted that the information should be provided to Cheney because “the ‘allegations’ are the basis for changing his condition of employment, [the] basis for his security clearance suspension, and [the] basis for security violations.”
II. DISCUSSION
As the majority correctly notes, the court’s scope of review is limited. Moreover, precedent has clearly established that this court may not review the underlying merits of an agency’s decision to suspend a security clearance. Indeed, it is worth repeating that no one has a “right” to a security clearance and that decisions regarding such matters involve “a sensitive and inherently discretionary judgment call” that is “committed by law to the appropriate agency of the Executive Branch.” Dep’t of the Navy v. Egan, 484 U.S. 518, 527-28, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988). Thus, like the majority, I agree that this case turns on whether the procedures set forth in § 7513 were followed, specifically the adequacy of the notice of the reasons that were provided to Cheney for his security clearance suspension. However, this is where the majority and I part company.
The majority states that the requirements of § 7513 are met if “the notice ‘provides the employee with an adequate opportunity to make a meaningful reply to the agency’ before being suspended.” Op. at 1352 (quoting King v. Alston, 75 F.3d 657, 662 (Fed.Cir.1996)). It seems to me that the quote is taken out of context. To quote more fully, the Alston court stated the following:
[S]ection 7513(b) entitles an employee to notice of the reasons for the suspension of his access to classified information when that is the reason for placing the employee on enforced leave pending a decision on the employee’s security clearance. Such notice provides the employee with an adequate opportunity to make a meaningful reply to the agency before being placed on enforced leave. Merely providing the employee with information that his access to classified information is being suspended, without more, does not provide the employee with sufficient information to make an informed reply to the agency before being placed on enforced leave.
*1356 Alston, 75 F.3d at 661-62. Thus, the court in Alston noted the unique situation that occurs when security clearance suspensions are the basis for adverse employment actions against an employee covered by § 7513: that employee is entitled to notice of the reasons for the suspension of his access to classified information. But this language does not explain the level of detail this notice must provide in cases involving security clearance suspensions, which is the precise question that this case involves.
To understand how detailed the notice of the reasons must be in cases such as this, one need only look at the paragraph preceding the one quoted above from Alston. There, this court emphasized that a notice “is sufficient ... when it apprises the employee of the nature of the charges ‘in sufficient detail to allow the employee to make an informed reply.’” Id. at 661 (quoting Brook v. Corrado, 999 F.2d 523, 526 (Fed.Cir.1993) (internal citation omitted)). The facts of Alston shed additional light on this question. As the majority notes, Alston’s security clearance, a condition of his employment, was suspended because the agency had concerns that he “may suffer from a medical condition which requires further investigation and evaluation.” Alston, 75 F.3d at 659. The agency did not identify any specific medical condition. Id. With his security clearance suspended, Alston no longer had access to his work site and he was placed on administrative leave. Id. After reconsidering the case on two different occasions, the Board ultimately found that Alston had been denied meaningful due process and the procedural protections of § 7513 because it concluded that the agency had not provided adequate notice of the reasons for the suspension. Id. The agency appealed. While this court agreed with the Board that an agency “must provide some indication of the reasons” for its decision to suspend a security clearance, it nevertheless reversed the Board’s decision. Id. at 661. The court based its decision on the fact that the agency had informed Alston that his security clearance was being suspended based on his medical condition, which permitted Alston “to focus his response on his medical status.” Id. at 662. Moreover, Alston was permitted to respond to the agency by submitting medical evidence that the agency considered before it placed him on enforced leave. Id. Based on these circumstances, this court concluded that Alston had received sufficient procedural protection before being placed on leave. Id. at 663.
In my opinion, the result in Alston dictates affirming the Board in Cheney’s case. By my count, Cheney received a total of seven different reasons for the security clearance suspension:
1. “[Allegations of potentially derogatory personal conduct” (Gilbride’s September 22, 2004, letter; Johnson’s October 1, 2004, memorandum);
2. “[Pjossible violations of law and DEA Standards of Conduct” (Gil-bride’s September 22, 2004, letter);
3. Failure “to comply with security regulations” (Gilbride’s September 22, 2004, letter);
4. A “demonstrated ... pattern of dishonesty and/or rule violations” (Gil-bride’s September 22, 2004, letter);
5. Allegations that Cheney “inappropriately queried or caused to be queried Law Enforcement Data Bases [sic]” (Johnson’s November 17, 2004, memorandum);
6. Allegations that Cheney “abused the Administrative Subpoena process” (Johnson’s November 17, 2004, memorandum); and
7. A belief that Cheney was “in violation of the confidentiality agreement [he] entered into with [OPR] during *1357 [its] investigation into these issues” (Johnson’s November 17, 2004, memorandum).
As Cheney’s counsel conceded at oral argument, the reasons given to Cheney for his security clearance suspension were more specific than the reason given in Alston. Indeed, the first four reasons, when viewed in conjunction, informed Cheney that the suspension was not based on some work performance issue but rather on his personal conduct and noncompliance with rules and regulations. Moreover, the last three reasons provided Cheney with three concrete situations upon which he was invited to focus his response to the proposed employment action.
Nonetheless, Cheney’s counsel argued that the context of this case shows that Cheney could not make an informed response absent more detailed information. I must disagree. The record clearly shows that Cheney was adequately aware of the allegations against him as he was able to formulate a meaningful response to the agency. Specifically, on January 4, 2005, HRM wrote to the agency on Cheney’s behalf regarding the allegations that he had abused the subpoena process and inappropriately queried the criminal database. HRM essentially argued that Cheney had not abused his authority with respect to either of these events, and it denied that Cheney had ever even conducted a database inquiry check because he did not have a password to access the system. This letter reveals that Cheney could, and did, focus on the allegations that he had abused the subpoena process and inappropriately queried the criminal databases to render a response. Thus, the context of this case does not provide any reason to depart from the precedent established by Alston.
It seems to me that the majority misses the mark. This is most evident from the use of an inapt analogy likening this case to an allegation that Cheney robbed a bank. Op. at 1352.[1] The majority would insist that Cheney be given more detailed information, such as dates of when his violations occurred, some notion of who his accusers were, etc., notwithstanding the fact that security clearance matters are discretionary, can be highly sensitive, and there was an ongoing investigation that could have been jeopardized by revealing too many details. But this case is not a criminal matter requiring a bill of particulars; it is a civil matter, and Cheney only needed to be given enough information to enable him to focus his response. Indeed, the circumstances of this case show that he was not traversing through some billowing fog of confusion but was in fact aware of what the allegations were.[2]
Moreover, the majority’s position appears to disregard what Cheney was seeking from the agency by his requests for *1358 “additional information.” Op. at 1345. Cheney was not seeking information to shed light on what the allegations were; he was seeking details — indeed, evidence— in order to defend himself on the merits of the security clearance suspension, which are not reviewable. See Egan, 484 U.S. at 528-30, 108 S.Ct. 818. In fact, Cheney’s counsel made this point very clear in the November 8, 2004, written response when he indicated Cheney’s efforts to determine “what scrap of information; what bit of evidence, has been utilized by the Agency to suspend” Cheney’s security clearance.[3] This is a far cry from saying that Cheney had no idea to what the agency was referring or that he could not formulate any response to the allegations against him. In sum, Cheney’s arguments that he needed more detailed information relate, not to the notice requirements, but to the merits of the security clearance determination, an argument that this court should not entertain.[4]
Furthermore, Johnson’s November 17, 2004, memorandum advised Cheney that the suspension was based in part on the agency’s belief that Cheney had breached the confidentiality agreement he signed when he was interviewed by the two investigators from OPR. This reason for suspending Cheney’s security clearance was sufficient by itself to adequately apprise Cheney why he was being suspended. The reason does not require much elaboration; put simply, one breaches a confidentiality agreement by discussing the subject matter with an unauthorized individual. In this case, the record supports the agency’s concerns that Cheney had done just that. Specifically, HRM wrote letters to the agency on Cheney’s behalf discussing the allegations and requesting copies of the file materials, which suggests that Cheney discussed the matter with HRM. There is no evidence that HRM was Cheney’s retained counsel, and the terms of the confidentiality agreement forbade Cheney from speaking to anyone except retained counsel. Moreover, unlike the allegations for the database queries and abuse of the subpoena process, Cheney never complained that he needed more details such as a time period for this allegation. Indeed, this is clearly not a matter that he could claim might have occurred “thousands of times.” In short, this reason did not require more explanation, and the fact that Cheney chose not to respond to it does not mean that he was unable to do so.
In deciding to reverse in this case, the majority departs from Alston and the standard of review therein because it requires more information than is necessary to satisfy due process concerns in the unique cases that involve security clearances. Such matters are left to the discretion of the agency, and a security clearance is something to which Cheney has no right or entitlement. The majority therefore treads into territory left to the agency’s discretion and its opinion is contrary to the principle that this court does not review the basis for or adequacy of security clearance determinations. In doing so, the majority upsets the delicate balance between according deference to the agency on security clearance determinations and satisfying due process concerns of the notice requirement under § 7513 that Egan and cases like Alston have struck in *1359 favor of the agency’s discretion. In contrast, an affirmance here respects that delicate balance, avoids unsavory results like potentially jeopardizing investigations, and satisfies due process concerns in cases involving security clearances and the notice requirement under § 7513.
III. CONCLUSION
Based on the circumstances of this case, I would find that Cheney had sufficient information to formulate a response. The reasons given for the security clearance suspension were certainly more specific than the reason provided in Alston. Further, just as in Alston, the facts reveal that Cheney was able to make a response to the allegations. Therefore, I believe that the final decision of the Board sustaining Cheney’s indefinite suspension should be affirmed. Accordingly, I must respectfully dissent.

. The majority may have adopted this analogy from Cheney’s counsel, who at oral argument suggested that if Cheney was arrested for robbing a bank and later had his security clearance suspended for “robbing a bank,” he would know what the agency meant, and the world would scoff at his argument that he needed more detailed information. In contrast, counsel argued that if Cheney had not robbed a bank, he would need more information. Counsel’s use of the analogy is itself flawed because, to borrow from the criminal context, it suggests that the sufficiency of the notice would depend on an employee’s "guilt or innocence” of the allegations.

. A prime example of Cheney's understanding is evinced by HRM's focus on the database inquiries, the basis for the media reports about which Cheney complained to the DOJ. Specifically, HRM argued that Cheney had authority to cause the criminal database to be queried, that this could happen thousands of times on a yearly basis, and that Cheney had never conducted a database inquiry check because he did not have a password to access the system.

. HRM made similar pleas for more detailed information on Cheney's behalf, pleas that the majority acknowledges were "civil case discovery” to which Cheney was not entitled. Op. at 1353.

. In fact, this is exactly the conclusion that the administrative judge reached in his Initial Decision that was affirmed by the Board. Moreover, this court has previously rejected similar arguments for this very reason. See Parker v. Dep’t of the Navy, 86 Fed.Appx. 415, 417-18 (Fed.Cir.2004).