NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NATHANIEL J. WILLINGHAM,**
*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent*

---

2019-2031

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-18-0850-I-1.

---

Decided: April 8, 2020

---

NATHANIEL J. WILLINGHAM, Virginia Beach, VA, pro se.

MEEN GEU OH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOSEPH H. HUNT, STEVEN JOHN GILLINGHAM, ROBERT EDWARD KIRSCHMAN, JR.; SANDRA PATTERSON-JACKSON, Military Sealift Command, United States Department of Navy, Norfolk, VA.

---

Before LOURIE, MOORE, and WALLACH, *Circuit Judges*.

PER CURIAM.

Mr. Nathanael J. Willingham appeals from a decision of the Merit Systems Protection Board (the "Board") affirming his indefinite suspension by the Military Sealift Command ("MSC") of the United States Navy. *Willingham v. Dep't of the Navy*, No. DC-0752-18-0850-I-1 (M.S.P.B. Mar. 11, 2019) ("*Decision*"). For the reasons detailed below, we *affirm* the decision of the Board.

BACKGROUND

Willingham served as an equal employment opportunity ("EEO") specialist in the MSC from 2016 to 2018, a position that entails access to classified information. Thus, possession and maintenance of a security clearance is a requisite of the job. In 2017, Willingham filed an EEO complaint asserting discrimination based on MSC's failure to make reasonable accommodations for his disability. In late March 2018, he added a class complaint alleging that MSC discriminated against persons with disabilities as a class. *See* 29 C.F.R. § 1614.204 (class complaints).

A few days later, in April 2018, Willingham received an order from his manager, Mr. Carneal Smith, placing him on paid administrative leave pending an investigation into "a possible misuse[] of [his] position and protected information accessible to [him] in [his] position" as an EEO specialist at MSC. Appx023. In May 2018, he was informed that his security clearance had been suspended "based on [his] personal conduct," Appx024, which was followed, several days later, with a notice of proposed indefinite suspension from Smith. In the notice, Willingham's offense was again described as "possible misuse of [his] position and protected information accessible to [him]" as an EEO specialist. Appx025.

Willingham eventually filed his response to the proposal of indefinite suspension. He cited an enclosed

declaration from Smith denying that Willingham's suspension was based on his failure to redact personally identifiable information in his EEO complaint but was based instead on "misuse of his public trust position to support his class complaint." Appx054. In his response, Willingham offered Smith's statement as proof of reprisal for his EEO action. Appx031–033.

The deciding official issued a decision effectuating the proposed indefinite suspension, citing Willingham's lack of a security clearance and the requirement of his position that he maintain one. Willingham was indefinitely suspended as of September 1, 2018, pending the ultimate resolution of his security clearance by the Department of Defense Consolidated Adjudication Facility.

Willingham appealed to the Board, and, during the appeal's pendency, sought to add a claim alleging retaliation for his filing an EEO complaint. The Administrative Judge ("AJ") denied this request, explaining that under *Department of the Navy v. Egan*, 484 U.S. 518, 530–31 (1988), the Board lacks authority to evaluate the sufficiency of the agency's stated reasons for suspending a security clearance, even if the appellant alleges reprisal for EEO activity. The AJ also denied Willingham's motion for sanctions on the basis that the agency misrepresented his EEO complaint.

After a hearing, the AJ rendered an initial decision affirming Willingham's suspension. The AJ rejected Willingham's argument that he was deprived of the "specific reasons" for his suspension as required by 5 U.S.C. § 7513(b), noting Willingham's citation of Smith's declaration and his accompanying argument that his EEO counselor—not he—was responsible for failing to redact personally identifiable information of another person in his EEO complaint. *Decision*, slip op. at 4. For that reason, the AJ found that he was sufficiently made aware of the reason for his suspension. *Id.*

The AJ's initial decision became the decision of the Board because Willingham did not appeal to the full Board, which at that time lacked a quorum. 5 U.S.C. § 7701(e)(1). This appeal followed. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

The scope of our review of an appeal from a decision of the Board is limited. We must affirm the Board's decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Credibility determinations are within the discretion of the Board and are "virtually unreviewable" on appeal. *King v. HHS*, 133 F.3d 1450, 1453 (Fed. Cir. 1998). The burden of establishing reversible error in a Board decision rests upon the petitioner. *See Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

An employee has no right to a security clearance, and revocation of a security clearance is not, of itself, an adverse action invoking the jurisdiction of the Board. *Egan*, 484 U.S. at 528, 531. Our review of an adverse action stemming from revocation of a security clearance is limited to (1) whether the security clearance was revoked; (2) whether it was a requisite of the employee's position; and (3) whether the procedures of § 7513 were followed. *Hornseth v. Dep't of the Navy*, 916 F.3d 1369, 1373–74 (citing *Hesse v. Dep't of State*, 217 F.3d 1372, 1376 (Fed. Cir. 2000)).

Under 5 U.S.C. § 7513(b), an employee "against whom an action is proposed" is entitled to certain procedural protections, including "at least 30 days' advanced written

notice . . . stating the specific reasons for the proposed action," a reasonable time to answer the allegations and to provide evidence in support, a legal representative, and a written decision explaining the reasons for the action ultimately taken.  In the context of an adverse action stemming from revocation or denial of a security clearance, an employee is entitled under § 7513(b)(1) "to notice of the reasons for the suspension of his access to classified information when that is the reason for placing the employee on enforced leave pending a decision on the employee's security clearance."  *King v. Alston*, 75 F.3d 657, 661–62 (Fed. Cir. 1996).

Willingham's primary argument is that the agency failed to provide him "specific reasons" for its proposal to indefinitely suspend him in violation of § 7513(b).  Willingham contends that, like the employee in *Cheney v. Department of Justice*, 479 F.3d 1343 (Fed. Cir. 2007), the agency's vague articulation of his alleged offense left him to guess at what he had done wrong.

The government responds that § 7513(b) does not entitle Willingham to "granular details" surrounding the security clearance revocation, Appellee Br. 9, and that Willingham's subsequent response to the proposed action, as well as another communication sent to the Chief of Naval Operations **[Appx046–049]**, demonstrated his awareness of the allegation against him.

We agree with the government.  As we stated in *Cheney*, "the employee must be given enough information to enable him or her to make a meaningful response to the agency's proposed suspension of the security clearance." 479 F.3d at 1352.  In that case, we concluded that an indefinite suspension stemming from a security clearance revocation failed to comply with § 7513(b)(1) because it was "based on allegations of potentially derogatory personal conduct and possible violations of law and [agency] standards of conduct," later explained in the notice of proposed

indefinite suspension as a "fail[ure] to comply with security regulations" and a "demonstrated . . . pattern of dishonesty and/or rule violations." *Id.* at 1352–53 (adding that the agency later alleged he inappropriately queried agency databases). On the facts of that case, it was unreasonable for the Board to have found this sufficient notice. *Compare with Alston*, 75 F.3d at 659, 662 (similar suspension on the ground that the employee "'may suffer from a medical condition which requires further investigation'" was sufficient because the employee could focus his response on his medical status).

Here, the reason provided in the initial notice of proposed indefinite suspension was certainly vague. Appx023 ("possible misuse[] of [his] position and protected information accessible to [him] [as an EEO specialist]"). But the shortcomings of the initial notice did not prejudice Willingham's ability to effectively respond because Smith's declaration provided a more detailed rationale for the suspension. Appx054 (confirming that the suspension was based on Willingham's "misuse of his public trust position to support his class complaint," not a failure to redact information in that complaint). Critically, that declaration was in Willingham's possession before he made his response to the agency, and he made effective use of it. Appx033 ("Smith has signed a declaration indicating the information in my EEO complaint was the misuse of information."); *id.* (arguing that the recipients of his EEO class complaint already had access to the allegedly misappropriated information).

The record thus amply supports an inference that, at the time Willingham responded to his proposed suspension, he was well-aware that his alleged offense consisted of misappropriating non-public information of other EEO complainants—whose information he had special access to, as an EEO specialist—and using it in his own EEO class complaint. This is sufficient notice under our precedent. *See Alston*, 75 F.3d at 661–62. Thus, substantial evidence

supports the Board's finding that Willingham received the notice he was entitled to under § 7513(b)(1).

Willingham also contends that his constitutional right to due process was violated by the deciding official's invocation of attorney-client privilege concerning communications between him and the legal department of MSC. But the deciding official's decision to suspend Willingham indefinitely was based entirely on the suspension of Willingham's security clearance **[Appx057–059]**, an unreviewable determination and one which was not entrusted to the deciding official in any event. Because Willingham could not perform his duties without a security clearance, and the clearance had been suspended, the identified *ex parte* communications do not create "a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding," *Stone v. FDIC*, 179 F.3d 1368, 1376–77. A different deciding official, free of any *ex parte* communication, would have little choice but to reach the same conclusion: that Willingham's position required a security clearance, and he did not hold one. *See Hornseth*, 916 F.3d at 1375–76.

Finally, Willingham argues that the Board erred by denying his motion to amend his appeal to include a claim of reprisal for EEO activity. We conclude, as the Board did, that this claim would have been futile because Willingham's suspension was based entirely on his security clearance suspension, a decision that the Board is barred from reviewing under *Egan*. *See Hesse*, 217 F.3d at 1377 (concluding that the Board cannot review a security clearance determination in the guise of a Whistleblower Protection Act claim). The same principle is applicable to a claim for

EEO reprisal.  Thus, the Board did not err in denying Willingham's motion.[1]

CONCLUSION

We have considered Willingham's further arguments but find them unpersuasive.  For the foregoing reasons, we *affirm* the decision of the Board.

**AFFIRMED**

---

[1]    The Board's decision not to impose sanctions on the agency for arguing that the Board lacked jurisdiction over Willingham's EEO reprisal claim to the extent Willingham's prior EEO activity comprised a formal complaint was not an abuse of discretion.  The agency made its argument in the alternative, asserting that "if" Willingham had filed a formal EEO complaint, the Board would lack jurisdiction, SAppx81, and Willingham failed to show that this argument was so lacking in good faith as to merit sanctions.