NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JAMES E. KING,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2022-2152

---

Petition for review of the Merit Systems Protection Board in No. AT-0752-21-0271-I-1.

---

Decided:  April 26, 2024

---

CHRISTOPHER D. VAUGHN, The Vaughn Law Firm, LLC, Decatur, GA, for petitioner.

ELIZABETH MARIE DURFEE PULLIN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

---

Before TARANTO, CHEN, and HUGHES, *Circuit Judges*.

PER CURIAM.

Petitioner James E. King appeals a final decision of the Merit Systems Protection Board, in which the Board sustained the Department of the Army's decision to remove Mr. King from his position as an army civilian police officer. Because the Board's decision was supported by substantial evidence and is otherwise in accordance with the law, we affirm.

I

A

Mr. King had been employed by the Department of the Army since 2009, as a Department of the Army Civilian Police Officer (DACP) at the Directorate of Emergency Services/Provost Marshal's Office located on Fort Eisenhower,[1] Georgia. In 2014, Mr. King was promoted to a higher graded position as a GS-0083-08 DACP officer, commonly referred to as a "Game Warden." Mr. King remained in this position until he was removed in February 2021, after the agency sustained three charges of misconduct against him.

The authority and jurisdiction of a DACP working at Fort Eisenhower is specifically limited to "performing law enforcement or security functions on Fort [Eisenhower]." J.A. 275–77 (Aug. 14, 2020 Memorandum for Record describing DACP authority and jurisdiction, signed and acknowledged by Mr. King); Army Regulation (AR) 190-56, ¶ 5-2.*a* (Mar. 15, 2013). A DACP does not have authority to

---

[1]    During Mr. King's employment as a DACP, and at the time of the Board's decision, his Army post was known as Fort Gordon, Georgia. However, as of October 2023, the post has been officially renamed Fort Eisenhower, Georgia. As such, this opinion only refers to the Army post under its current official name, Fort Eisenhower.

exercise law enforcement or security tasks outside of Fort Eisenhower. J.A. 275; AR 190-56, ¶ 5-2.*d*. Accordingly, DACPs are only permitted to wear their official uniform and badge while on duty at Fort Eisenhower or while traveling to and from work. J.A. 276; AR 190-56, ¶ 5-2.*f*. With limited exceptions, a DACP is not authorized to patronize off-post establishments while wearing their official uniform or badge. J.A. 276. Similarly, DACP are prohibited from carrying their service weapons while off duty. J.A. 276; AR 190-56, ¶ 5-2.*f*.

When performing law enforcement activities, a DACP is subject to the requirements of the Individual Reliability Program (IRP), which ensures that individuals performing such duties maintain the high standard of "character, trustworthiness, and fitness" expected of law enforcement and security professionals. J.A. 277; AR 190-56, ¶ 3-3.*b*. A DACP is prohibited from carrying a service weapon or performing any law enforcement or security duties if they are disqualified as unreliable under the IRP. J.A. 277; AR 190-56, ¶ 3-8.*b*. Additionally, because continued qualification for the IRP is a condition of employment, AR 190-56, ¶ 3-4.*b*, disqualification can also serve as a basis for removal, J.A. 277; AR 190-56, ¶ 2-2.*a*.

Should the agency subsequently propose removal, the DACP, as an "employee" under 5 U.S.C. § 7511, is entitled to receive written notice and an opportunity to respond to the proposed removal. *See* 5 U.S.C. § 7513 (describing procedures for removal of civil service employees). The same procedural process further establishes the right to appeal a final removal decision to the Board. 5 U.S.C. § 7513(d).

B

On or around October 16, 2020, the agency began an investigation into Mr. King after receiving allegations against him for misuse of government property and false reporting. Specifically, another officer alleged that Mr. King's game warden truck had been spotted at an off-

post restaurant during duty hours, when he was expected to be on post. Evidence collected during the investigation indicated that Mr. King had used his game warden vehicle to dine at the alleged off-post restaurant during duty hours, without authorization, while wearing his DACP uniform and badge, while in possession of his service weapon. The investigating officer also discovered that the official duty log Mr. King had filled out for the day in question reflected that he had been performing security checks on post at the time of the alleged off-post incident. After collecting the necessary statements from the witnessing and reporting officers and the waitstaff of the off-post restaurant, and conducting additional interviews with the relevant witnesses, the investigating officer prepared an Investigators Statement, giving "a final report" of the evidence that had been collected during the investigation. J.A. 267–68. The investigation was completed on November 9, 2020.

Prior to the October 2020 investigation, the agency identified no previous formal disciplinary actions against Mr. King during his time as a DACP. However, Mr. King had received written counseling from his immediate supervisor concerning multiple instances of conduct-related incidents occurring between May and September of 2020, including "irregular attendance," J.A. 10, and "key control concerns," J.A. 85 (supervisory training officer stressing "the importance of key control" after receiving six keys— that had been checked out by Mr. King—one of which had access to artillery, that had been left hanging in the lock of a desk drawer). And on October 19, 2020, Mr. King received a Letter of Counseling from the Deputy Director of his department addressing "concerns with the accuracy of his time and attendance reporting based upon a larger agency investigation concerning the conduct of multiple officers." J.A. 10. The letter also stated that "[a]ny future discrepancy in [Mr. King's] time and attendance records or entries . . . [would] subject [him] to disciplinary action." J.A. 271.

On January 6, 2021, Mr. King was permanently decertified from the IRP based on the agency's determination that he did "not possess the 'character, trustworthiness, and fitness [that] are consistent with the high standards expected of law enforcement and security professionals.'" J.A. 71 (Decertification Memorandum) (quoting AR 190-56, ¶ 3-3.*b*) (alteration in original). The determination was based on documentation including, but not limited to, Mr. King's employment record, previous written counseling for conduct related issues, and "information developed as part of an investigation into [his] misuse of government property and failure to properly account for [his] time in official duty records on or about 15 October 2020." *Id.*

That same day, based on the evidence collected during the investigation, the agency issued Mr. King a Notification of Proposed Removal based on three charges: (1) Conduct Unbecoming a Law Enforcement Officer (Misuse of Government Property); (2) Lack of Candor; and (3) Failure to Maintain a Condition of Employment (Decertification under the IRP). J.A. 52–62. The Notice laid out the specific details relied on to establish the three charges, as well as the "aggravating and mitigating *Douglas* Factors" that were considered in deciding Mr. King's ultimate penalty. J.A. 53–56; *see Douglas v. Veterans Admin.*, 5 M.S.P.R. 280, 305–06 (1981). Enclosed along with the Notice were the relevant witness statements, Mr. King's official duty log entries, and the IRP Decertification Memo. J.A. 62. The Notice also apprised Mr. King of his "right to respond" and "furnish affidavits, and other documentary evidence in support of [his] response," and clarified that no removal decision had been made, or would be made, until after the time Mr. King was given to respond. J.A. 56–57. At the conclusion of the Notice, Mr. King was informed of his right to appeal any final appealable decisions to the MSPB and provided with the necessary details to obtain an appeal. J.A. 57–61 (listing the four different appeal options available,

but noting that only one option can be selected, and the selection would be binding).

Mr. King, through a union representative, responded to the Notice in writing on January 11, 2021. In his response, Mr. King contested the allegations against him, the adequacy of the agency's investigation, and the appropriateness of his proposed removal. J.A. 72–75. On February 10, 2021, after considering his response, the agency sustained the three charges against Mr. King and removed him from his position, effective February 12, 2021 (the Removal Decision). J.A. 63–70. Similar to the earlier Notice, the Removal Decision again provided Mr. King with the specifications for the three charges against him, the relevant *Douglas* factors supporting his removal, and his appeal options. *Id.*

C

On March 9, 2021, Mr. King appealed the agency's Removal Decision to the MSPB and a hearing was held on June 22, 2021. On June 28, 2021, the administrative judge assigned to the appeal issued an initial decision, sustaining the agency's charges, denying Mr. King's affirmative defenses, and sustaining the agency's decision to remove Mr. King from his position. The administrative judge determined that the agency had proven all three of its charges by a preponderance of the evidence, and that the agency had proven by a preponderance of the evidence that Mr. King's "penalty of removal promotes the efficiency of service." J.A. 18–23. The administrative judge further determined that Mr. King had failed to prove all three of his affirmative defenses. J.A. 24–29. Finally, the administrative judge reviewed the agency's consideration and application of the *Douglas* factors, and concluded that Mr. King's removal did not exceed the bounds of reasonableness. J.A. 29–31.

On September 1, 2021, Mr. King petitioned the Board for review of the administrative judge's initial decision.

Mr. King argued that the administrative judge erred in sustaining the three misconduct charges, erred in finding that he did not establish his affirmative defenses (harmful error, equal employment opportunity retaliation, and disability discrimination/disparate treatment), and erred in finding that the penalty of removal was within the bounds of reasonableness. Upon reviewing the petition filings, the Board concluded that Mr. King had not established any basis for which it should grant the petition for review and denied the petition. J.A. 2; *see also* 5 C.F.R. § 1201.115 ("Criteria for granting petition or cross petition for review."). On June 28, 2022, the Board issued a final order affirming the administrative judge's initial decision, but expressly modifying it "to address [Mr. King's] disparate penalty claim." J.A. 2 (hereinafter, the Board's decision).

Mr. King timely filed this petition for review on August 25, 2022, within 60 days of the Board's final decision. *See* 5 U.S.C. § 7703(b)(1)(A). This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).[2]

## II

This court must affirm a Board's decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *See* 5 U.S.C. § 7703(c). We review the Board's legal determinations, such as statutory interpretations, de novo and its

---

[2]    Although Mr. King asserted an affirmative defense based on equal employment retaliation—which would otherwise preclude us from having jurisdiction—he has abandoned those claims on appeal, thus providing this court with jurisdiction. ECF No. 4, at 1–3; *Harris v. Sec. & Exch. Comm'n*, 972 F.3d 1307, 1318 (Fed. Cir. 2020).

findings of fact for substantial evidence. *Archuleta v. Hopper*, 786 F.3d 1340, 1346 (Fed. Cir. 2015).

A decision is supported by substantial evidence when there is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *McLaughlin v. Off. of Pers. Mgmt.*, 353 F.3d 1363, 1369 (Fed. Cir. 2004) (cleaned up). The burden of establishing reversible error in the Board's decision rests with the petitioner. *Harris v. Dep't of Veterans Affs.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

## III

Mr. King presents three specific arguments on appeal. We discuss each in turn. First, Mr. King argues that he was unconstitutionally removed without due process, in violation of the Fifth Amendment Due Process Clause. Second, Mr. King contends that the Board erred in finding that the agency met its burden of proof to sustain the first two charges against him. And third, Mr. King asserts that the Board failed to properly assess the reasonableness of his removal. For the reasons stated below, we reject all three of Mr. King's arguments.

## A

As a federal employee as defined by 5 U.S.C. § 7511(a)(1), Mr. King has a constitutionally-protected "property right in his continued employment" with the federal government. *King v. Alston*, 75 F.3d 657, 661 (Fed. Cir. 1996). Therefore, in an adverse action for removal, Mr. King is entitled to the procedural due process protections provided in § 7513 of title 5. *See also* 5 U.S.C. § 7512(1) (listing "removal" as an action covered by the statute). Such due process protections "include written notice of the specific reasons for the proposed action, an opportunity to respond to the charges, and the requirement that the agency's action is taken to promote the efficiency of the service." *Kaplan v. Conyers*, 733 F.3d 1148, 1154

(Fed. Cir. 2013). Additionally, Mr. King has the right to appeal his for-cause removal to the Board. *Id.* (citing § 7513(d)). And on appeal, the Board is statutorily mandated to determine whether the agency's decision was supported by a preponderance of the evidence. *Id.* (citing 5 U.S.C. § 7701(c)(1)(B)).

Mr. King alleges that he was removed from his service, and thus "deprived . . . of his interest in continued employment" without proper due process. Pet. Br. at 10. We find no basis for this allegation. The record establishes that he was given written notice of the charges against him and the opportunity to respond. And the Board found his removal supported the efficiency of the service. Nothing more is required.

Mr. King's property interest was in his employment as a DACP, not in his IRP certification. *See Dep't of Navy v. Egan,* 484 U.S. 518, 528 (1988) (holding that an employee does not have a right to a security clearance). Additionally, unlike removal, IRP decertification is not a reviewable "adverse action" under § 7512 nor subject to the procedural requirements of § 7513. As such, Board review of the agency's IRP decision was only available upon the agency's adverse removal action. In light of the aforementioned notice, opportunity, and review procedures afforded to Mr. King, there is no question that he received proper due process protections related to his removal. Therefore, we reject Mr. King's unsupported argument that he was deprived of due process under the Fifth Amendment, and find that the Board did not err in sustaining the agency's third charge of failure to maintain a condition of employment.

B

To sustain the first charge against Mr. King for conduct unbecoming a law enforcement officer (misuse of government property), the Board was required to conclude that the agency had shown by a preponderance of the evidence "(1) that [Mr. King] used (or removed or possessed)

government property; and (2) the use (or removal or possession) was without permission." J.A. 11 (citing *Castro v. Dep't of Def.*, 39 M.S.P.R. 555 (1989)). To sustain the second charge against Mr. King for lack of candor, the Board was required to conclude that the agency had shown by a preponderance of the evidence "(1) that [Mr. King] made statements which were less than candid, truthful, accurate, or complete, involving deception; and (2) such statements were knowingly made or withheld." J.A. 11 (citing *Rhee v. Dep't of Treasury*, 117 M.S.P.R. 640 (2012)).

Again, the record establishes that the agency has met its burden of proof under both charges. The Board affirmed the first charge against Mr. King after finding that the agency "presented clear and undisputed evidence that" DACP officers "were not authorized to wear their official uniforms, badges, or service weapons outside of Fort [Eisenhower] except in special circumstances not presented by the facts of this appeal." J.A. 18. The Board further found that the agency had established that Mr. King had violated this long-standing policy when he "used his government vehicle to drive at least ten miles" to the off-post restaurant while "in his full uniform." J.A. 20.

The evidence used to support the Board's finding as to the agency's first charge (misuse of government property), was also used to support its finding as to the agency's second charge (lack of candor). Because Mr. King's official duty log for October 15, 2020, placed him on post at the same time he was found to have been dining at the off-post restaurant, the Board subsequently determined that the agency had shown by a preponderance of the evidence that there was a "significant and deceptive omission from [Mr. King's] official duty log." J.A. 21.

Mr. King's main challenge to the Board's finding is that the DACP uniform policy is "poorly drafted," Pet. Br. at 19, and that his stop at the off-post restaurant was "authorized" because, according to Mr. King, it occurred on October

9 while enroute to a training area,[3] and not on October 15 as testified to by the waitress, Ms. Dulce Barajas, that served Mr. King during her October 15 shift, and two other witnessing officers, *id.* at 22. But we review the Board's findings for substantial evidence. The Board acknowledged "[t]he diverging testimony about when exactly [Mr. King] went to" the alleged restaurant, yet after "making credibility findings" as to each of the four witness' testimonies, including Mr. Kings', the Board concluded that it was "likely" and "far more credible" that the incident occurred on October 15. J.A. 16–18. Additionally, the Board explicitly noted that Mr. King's hearing testimony about when he stopped at the restaurant "was flatly inconsistent with his own official duty log entry for October 9." J.A. 18.

Because a reasonable mind could accept the testimonies of Ms. Barajas' and the other witnessing officers as adequate to support the conclusion that Mr. King used his government vehicle to drive to the off-post restaurant while on duty and wearing his official uniform and badge on October 15, we find that substantial evidence supports the Board's findings as to the first charge of misuse of government property. Additionally, because Mr. King's official duty log for October 15, 2020, clearly omits any details

---

[3]    Despite claiming that he stopped at the alleged restaurant on October 9, 2020, Mr. King's official duty log for that day contains no record of any such stop. Mr. King alleges that, just after beginning his shift, and while on his way to a training area, he stopped at the off-post restaurant to use the restroom and get some food after leaving post. Pet. Br. at 3. Yet Mr. King's official duty log shows that he traveled from post to the training area at least 10 miles away, in 14 minutes. J.A. 83. Thus, even under Mr. King's own version of events, he nevertheless intentionally omitted his stop at the off-post restaurant from his official duty log.

indicating that he left the post while on duty that day, substantial evidence also supports the Board's decision as to the second charge of lack of candor.

C

The Board is required to review an agency decision to determine whether "the agency-imposed penalty is clearly excessive, disproportionate to the sustained charges, or arbitrary, capricious, or unreasonable." *Douglas*, 5 M.S.P.R. at 284. But the Board's function is not to displace the agency's management responsibility; rather, it is to assure that the agency has properly exercised its managerial judgment within "tolerable limits of reasonableness." *Id.* at 302. Thus, the Board must give due weight to the agency's primary discretion in exercising the managerial function of maintaining employee discipline and efficiency. *Id.* Further, there are twelve articulated factors that agencies are expected to consider when determining the appropriateness of a particular penalty. *Id.* at 305–06 (listing non-exhaustive *Douglas* factors). "*Only if* the Board finds that the agency failed to weigh the relevant factors, or that the agency's judgment clearly exceeded the limits of reasonableness, is it appropriate for the Board then to specify how the agency's decision should be corrected to bring the penalty within the parameters of reasonableness." *Id.* at 306 (emphasis added).

Here, the Board reviewed the agency's "detailed [removal] decision letter explaining" the specific *Douglas* factors, both mitigating and aggravating, considered when determining the appropriate penalty for Mr. King. J.A. 30; *see also* J.A. 64–65. The Board also heard further testimony from the deciding officer discussing the specific weight given to each relevant factor. Then, after "carefully consider[ing] the agency's penalty analysis," the Board determined that "[o]n the whole," there was no basis to overturn the agency's decision to remove Mr. King from his position. J.A. 31.

Mr. King alleges that the Board failed to properly assess the reasonableness of his penalty because it "took the [a]gency's word at face-value" "[r]ather than properly reviewing the record." Pet. Br. at 23. We disagree.

After sustaining all three of the agency's charges, the Board properly assessed the agency's consideration of the relevant *Douglas* factors and the weight given to each, and determined that in light of the "seriousness of the offense for a law enforcement officer," and Mr. King's lack of "acknowledgement or remorse for such conduct," the penalty of removal was within the bounds of reasonableness. J.A. 31. The Board also found that because the nature of Mr. King's conduct "involved leaving his assigned duty station to purchase dinner off post and in his full uniform while providing false information in his official duty log about his whereabouts," there was clear evidence that his removal promotes the efficiency of service. J.A. 23. Because there is substantial evidence that Mr. King used his government vehicle to leave his post, while on duty and without permission, to make a prohibited stop at an unauthorized off-post restaurant while wearing his official uniform "including his badge and gun," and was not truthful about his whereabouts, J.A. 31, the Board did not err in concluding that removing Mr. King from his position as a law enforcement officer was not unreasonable.

## IV

Because the Board's decision was supported by substantial evidence, and his removal was not unreasonable, we affirm.

**AFFIRMED**

COSTS

No costs.