# United States Court of Appeals for the Federal Circuit

2007-3322

WILFREDO ROMERO,

Petitioner,

v.

DEPARTMENT OF DEFENSE,

Respondent.

Wilfredo Romero, of Laurel, Maryland, pro se.

Tara J. Kilfoyle, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.

Arthur B. Spitzer, American Civil Liberties Union of the National Capital Area, of Washington, DC, for amicus curiae American Civil Liberties Union of the National Capital Area.

Appealed from: Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

2007-3322

WILFREDO ROMERO,

Petitioner,

v.

DEPARTMENT OF DEFENSE,

Respondent.

Petition for review of the Merit Systems Protection Board in DC07520070328-I-1.

_____

DECIDED:  June 2, 2008

_____

Before  LOURIE, BRYSON, and DYK, <u>Circuit Judges</u>.

BRYSON, <u>Circuit Judge</u>.

Wilfredo Romero was employed as an auditor for the Office of Inspector General at the Department of Defense.  In December 2006 Mr. Romero was removed from his position for failing to maintain his security clearance.  He appealed the removal action to the Merit Systems Protection Board.  The Board affirmed the action, holding that it could not review the merits underlying a security clearance revocation.  Because the Board did not address whether the Department of Defense complied with its own procedures when revoking Mr. Romero's security clearance, we vacate the Board's decision and

remand for the Board to determine whether Mr. Romero can show harmful error resulting from any failure by the Department to follow its own procedures.

I

Mr. Romero had worked as an auditor at the Department's Office of Inspector General since 1999. His position required a Secret security clearance, which he had been granted by the Washington Headquarters Service Central Adjudication Facility ("WHS-CAF"). In 2004 Mr. Romero's supervisor asked the Defense Intelligence Agency Central Adjudication Facility ("DIA-CAF") to grant Mr. Romero clearance to obtain access to Sensitive Compartmented Information ("SCI") so that Mr. Romero would be able to assist with auditing work at the National Security Agency. After conducting an investigation, the DIA-CAF issued a letter of intent informing Mr. Romero that a preliminary decision had been made to deny him clearance for access to SCI. The specific security risk cited in the preliminary denial was the Honduran citizenship of Mr. Romero's wife and stepson. The letter of intent further stated that Mr. Romero's "access to collateral information has been suspended pending resolution of this matter." Both parties agree that the effect of that language was to suspend Mr. Romero's Secret security clearance.

After Mr. Romero responded to the letter of intent, the DIA-CAF issued a final decision denying Mr. Romero eligibility for access to SCI and revoking his "access eligibility to collateral classified information." Mr. Romero appealed the DIA-CAF's final determination by requesting a hearing before an administrative judge at the Defense Office of Hearing and Appeals. The administrative judge determined that the Defense Intelligence Agency ("DIA") "lack[ed] jurisdiction to consider whether an exception

should apply" to the Department's regulations precluding individuals with foreign immediate family members from eligibility for access to SCI. The administrative judge therefore addressed only the issue of Mr. Romero's access to collateral classified information. On that issue, the administrative judge considered the foreign influence mitigating conditions that might be relevant to Mr. Romero's relationship with his wife, but found that his wife's employment at the Honduran Embassy weighed against applying any mitigating conditions in Mr. Romero's favor. The administrative judge found that Mr. Romero's relationship with his stepson did not pose an unacceptable security risk. Nevertheless, based on Mr. Romero's relationship with his wife, the administrative judge recommended that the Defense Intelligence Agency Security Appeals Board ("DIA-SAB") affirm the DIA-CAF's decision to revoke Mr. Romero's access to collateral classified information.

After reviewing the administrative judge's recommendation, the DIA-SAB issued a decision affirming the determination that Mr. Romero did not meet the eligibility requirements for access to SCI. Turning to the administrative judge's determination that no mitigating factors applied to Mr. Romero's relationship with his wife, the DIA-SAB stated the following:

> The SAB concluded that you failed to mitigate the foreign influence security concerns. As noted by the DOHA Administrative Judge, the Foreign Influence standard applies and mitigating factors do not apply as your wife is, by definition, an agent of a foreign power (50 U.S.C.A. 1801(b)(1)(A)). Accordingly, as the security issues are deemed to be inconsistent with the national security interests, your eligibility for access to SCI is denied effective this date. This decision is final and concludes the administrative review of this process.

The DIA-SAB's final decision made no mention of the revocation of Mr. Romero's access to collateral classified information (i.e., his Secret security clearance).

On December 16, 2005, the WHS-CAF notified Mr. Romero of its decision to reciprocally accept the DIA-SAB's final decision denying his eligibility for access to SCI. Based on that decision, the WHS-CAF stated that his eligibility "for access to classified information and to occupy a sensitive position has been revoked." The WHS-CAF did not provide Mr. Romero any opportunity to appeal the revocation of his access to classified information because the revocation was based on the reciprocal acceptance of the DIA-SAB's final decision.

On July 26, 2006, Mr. Romero received a notice of proposed removal from the Office of Inspector General citing the DIA-SAB's denial of his access to SCI and the WHS-CAF's revocation of his access to classified information. A final decision was sent to Mr. Romero on December 21, 2006, and he was removed from his position eight days later.

Mr. Romero appealed his removal to the Merit Systems Protection Board. Before the administrative judge, Mr. Romero argued that he was denied due process because the Department of Defense did not give him the opportunity to challenge the WHS-CAF's reciprocal revocation. He further argued that the WHS-CAF's revocation of his access to classified information was invalid because the DIA-SAB only denied his eligibility for access to SCI. Additionally he argued that his removal was retaliatory. The administrative judge first rejected Mr. Romero's due process argument because Mr. Romero was given the opportunity to challenge the DIA-CAF's decision and because the Department's regulations do not require an opportunity for review of a reciprocal acceptance of a security clearance revocation. The administrative judge then determined that Mr. Romero's security clearance had been revoked, that Mr. Romero's

position required "access to sensitive compartmented information (SCI) and access to classified information," and that the Department had fully complied with the requirements of 5 U.S.C. § 7513. The administrative judge rejected Mr. Romero's remaining challenges to the Department's action as challenges to the merits of the decision to revoke his security clearance. The administrative judge therefore affirmed Mr. Romero's removal. On Mr. Romero's petition for review, the full Board denied review.

II

Under 5 U.S.C. § 7512(1), an agency's removal of an employee is an "adverse action." An employee subject to an adverse action is entitled to the protections of 5 U.S.C. § 7513. Those protections include written notice of the specific reasons for the proposed action, an opportunity to respond to the charges, the requirement that the agency's action is taken to promote the efficiency of the service, and the right to review of the action by the Board. When reviewing an adverse action under 5 U.S.C. § 7701, the Board may sustain the agency's action only if the agency can show that its decision is supported by a preponderance of the evidence. 5 U.S.C. § 7701(c)(1)(B). In most cases, the agency must provide evidence supporting the reasons for the adverse action. But in cases in which the adverse action is based on the denial or revocation of a security clearance, section 7701(c)(1)(B) does not require the agency to prove that the reasons for its decision to deny or revoke a security clearance are supported by a preponderance of evidence. In Department of the Navy v. Egan, 484 U.S. 518, 531 (1988), the Supreme Court observed that imposing such a burden would be inconsistent with the normal standard applied when granting security clearances—i.e., that granting

clearance is "clearly consistent with the interests of the national security." Instead, the Court stated that in reviewing a for-cause removal action of an employee who was denied a security clearance, the Board may only determine "whether such cause existed, whether in fact clearance was denied, and whether transfer to a nonsensitive position was feasible." Id. at 530.

In Hesse v. Department of State, 217 F.3d 1372, 1376 (Fed. Cir. 2000), we addressed the scope of review of removal actions that involve the revocation or denial of security clearance:

> The principles we draw from the Court's decision in Egan are these: (1) there is no presumption that security clearance determinations will be subject to administrative or judicial review, as those determinations are committed to the broad discretion of the responsible Executive Branch agency; (2) unless Congress specifically provides otherwise, the Merit Systems Protection Board is not authorized to review security clearance determinations or agency actions based on security clearance determinations; and (3) when an agency action is challenged under the provisions of chapter 75 of title 5, the Board may determine whether a security clearance was denied, whether the security clearance was a requirement of the appellant's position, and whether the procedures set forth in section 7513 were followed, but the Board may not examine the underlying merits of the security clearance determination. See King v. Alston, 75 F.3d 657, 662-63 (Fed. Cir. 1996); Drumheller v. Department of the Army, 49 F.3d 1566, 1571 (Fed. Cir. 1995); Lyles v. Department of the Army, 864 F.2d 1581, 1583 (Fed. Cir. 1989).

Although in a Board proceeding an agency does not need to provide evidence to justify the denial or revocation of a security clearance, section 7513(b)(1) requires agencies to give written notice to employees "stating the specific reasons for the proposed action." Section 7513 therefore requires—in some circumstances at least—that an agency do more than simply state that an adverse action is based on the revocation or denial of security clearance. In King v. Alston, 75 F.3d 657 (Fed. Cir. 1996), and Cheney v. Department of Justice, 479 F.3d 1343 (Fed. Cir. 2007), we held that the suspension of

an employee because of denial or revocation of a security clearance could not be sustained when the agencies involved did not "provide the employee with sufficient information to make an informed reply to the agency."  Cheney, 479 F.3d at 1352 (quoting Alston, 75 F.3d at 662).

Section 7513 is not the only source of procedural protections for employees subject to adverse actions based on security clearance decisions; agencies must also follow the procedures established by their own regulations.  See Drumheller v. Dep't of the Army, 49 F.3d 1566, 1569-73 (Fed. Cir. 1995) (reviewing Department of the Army regulations related to the revocation of security clearances).  In the event that an agency does not follow its own regulations, 5 U.S.C. § 7701(c)(2)(A) provides that an adverse action decision may not be sustained by the Board if the employee can show "harmful error in the application of the agency's procedures in arriving at such decision."

The government argues that under Egan, Hesse, and Robinson v. Department of Homeland Security, 498 F.3d 1361 (Fed. Cir. 2007), the Board and this court may not review the procedural validity of a security clearance revocation.  We disagree.  Egan and this court's decisions following it are based on the principle that foreign policy is the "province and responsibility of the Executive."  Egan, 484 U.S. at 529 (quoting Haig v. Agee, 453 U.S. 280, 293-94 (1981)).  In light of that principle, the Supreme Court in Egan observed that "unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs."  484 U.S. at 530.  The statutory provision allowing review of an agency's compliance with its own procedures leading to an adverse action does not amount to an unwarranted intrusion upon the authority of the Executive, however,

because the authority to formulate procedures for denying or revoking security clearances remains with the Executive.

We note that the government in Egan itself acknowledged that the Board may review whether the agency has complied with its procedures for revoking a security clearance, even though it may not review the substance of the revocation decision. The government's brief in Egan stated:

> We agree with the Board that it may examine whether the agency made such a determination [to revoke a security clearance], that is, whether the agency had procedures for denying or revoking clearances and whether the procedures were followed. The Board also could, in an appropriate case, find that a determination was not validly made because the employee was not afforded procedural protections guaranteed to him by the agency's regulations . . . .

Brief for Petitioner at 24-25, Dep't of the Navy v. Egan, 484 U.S. 518 (1988). In light of that concession, we decline to interpret Egan as having precluded such review without comment. The Supreme Court's decisions in Service v. Dulles, 354 U.S. 363 (1957), and Vitarelli v. Seaton, 359 U.S. 535 (1959), also make clear that federal employees may challenge an agency's compliance with its regulations governing revocation of security clearances. Nothing in Egan overrules those cases, and in fact the principle of those cases has been applied even in cases involving employee security issues. See Duane v. U.S. Dep't of Def., 275 F.3d 988, 993 (10th Cir. 2002) (holding that court was not precluded from reviewing a claim that agency violated its own procedural regulations when revoking or denying a security clearance); Reinbold v. Evers, 187 F.3d 348, 359 n.10 (4th Cir. 1999) (same).

In Mr. Romero's case, the Board was correct to reject the argument that the revocation of his Secret clearance was retaliatory, as that argument went to the merits

of the security clearance decision.  See Hesse, 217 F.3d at 1380.  The Board also did not err in finding that the agency had complied with the requirements of section 7513. Mr. Romero was provided with notice of his proposed removal, and the Department provided notice of the reasons for his removal and for the underlying revocation of his security clearance, and an opportunity to respond to the proposed removal.

The Board, however, did not address Mr. Romero's arguments that the Department failed to follow its own regulations in revoking his Secret security clearance. Mr. Romero has raised two challenges to the procedural validity of the Department's revocation of his Secret security clearance.  First, he argues that the DIA-SAB was authorized to review the denial of his eligibility for access to SCI, but not to revoke his Secret security clearance.  Second, he argues that the DIA-SAB did not actually revoke his Secret security clearance, even if it had authority to do so.  As a result, he asserts that the WHS-CAF's "reciprocal revocation" of his Secret security clearance was invalid. Because there was no revocation to reciprocally accept, Mr. Romero claims that in order to revoke his Secret security clearance, the WHS-CAF was required to provide him with a statement of reasons, an opportunity to respond, and an opportunity to seek review of the revocation at the Personnel Security Appeals Board.

In support of those arguments, Mr. Romero relies on a July 16, 1998, memorandum from the Office of the Assistant Secretary of Defense and DoD Regulation 5200-2-R.[1]  The Board did not address whether the Department complied

---

[1]   Mr. Romero also relies on Executive Order No. 12,968.  That order, however, provides that it is "intended only to improve the internal management of the executive branch and is not intended to, and does not, create any right to administrative or judicial review, or any other right or benefit."  Exec. Order No. 12,968 § 7.2(e).  Such language

with its own procedures in revoking Mr. Romero's Secret security clearance. Because the answer to that question may turn on the way that the Defense Department's procedures are interpreted and have been applied, matters that are not fleshed out in the record before us, we are not in a position to decide whether Mr. Romero's procedural objections have merit. That issue should be addressed by the Board in the first instance. Accordingly, we vacate the Board's decision and remand for the Board to determine whether Mr. Romero can show that the Department failed to follow its procedures and that any failure to do so resulted in harmful error.[2]

VACATED and REMANDED.

---

in Executive Orders bars a court from reviewing agency compliance with rules or regulations qualified in that manner. See Sur Contra La Contaminacion v. EPA, 202 F.3d 443, 449 (1st Cir. 2000); Air Transp. Ass'n of Am. v. FAA, 169 F.3d 1, 8-9 (D.C. Cir. 1999); Morongo Band of Mission Indians v. FAA, 161 F.3d 569, 575 (9th Cir. 1998); State of Mich. v. Thomas, 805 F.2d 176, 187 (6th Cir. 1986).

[2] The American Civil Liberties Union, as amicus curiae, argues that the Board erred because the record does not support a finding that Mr. Romero's Secret security clearance was actually revoked. We believe the WHS-CAF's statement that his eligibility "for access to classified information and to occupy a sensitive position has been revoked" shows that his clearance was revoked. In substance, the amicus's argument largely parallels the argument that the Department did not follow its own procedures when it issued the reciprocal revocation. It differs in one respect, however. Under section 7701(c)(2)(A), it is the employee's burden to show that the agency failed to follow its own procedures in reaching a removal decision and that the procedural deficiency constituted harmful error. Accepting the ACLU's characterization of the Department's action would seem to shift the burden to the Department to show compliance with its security clearance procedures.