# United States Court of Appeals for the Federal Circuit

---

**WILFREDO ROMERO,**
*Petitioner,*

v.

**DEPARTMENT OF DEFENSE,**
*Respondent.*

---

2010-3137

---

Petition for review of the Merit Systems Protection Board in consolidated case nos. DC0752070328-M-3 and DC0752060136-M-2.

---

Decided: October 3, 2011

---

JAMES C. COX, Jenner & Block, LLP, of Washington, DC, argued for the petitioner. Of counsel on the brief was ARTHUR B. SPITZER, ACLU of the Nation's Capital, of Washington, DC.

ELIZABETH M. HOSFORD, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were TONY WEST,

Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGHES, Deputy Director.

———————————

Before BRYSON, DYK, and PROST, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* PROST.
Concurring opinion filed by *Circuit Judge* DYK.

PROST, *Circuit Judge*.

Wilfredo Romero was employed as an auditor at the Department of Defense ("DoD"). In December 2006, Mr. Romero was removed from his position for failing to maintain his Secret level security clearance. He appealed the removal action to the Merit Systems Protection Board ("MSPB"). The MSPB affirmed the action. This court vacated the MSPB's decision and remanded for the MSPB to determine whether Mr. Romero could show harmful error resulting from the DoD's failure to follow its own procedures. *See Romero v. Dep't of Defense*, 527 F.3d 1324 (Fed. Cir. 2008) ("*Romero I*"). On remand, the MSPB again affirmed the removal. Because we agree that the DoD complied with its internal procedures in revoking Mr. Romero's security clearance, we affirm.

BACKGROUND

At issue is whether the DoD properly revoked Mr. Romero's Secret security clearance when it denied him a different kind of clearance, namely access to Sensitive Compartmented Information ("SCI").

A

The relevant events began in 2004, when Mr. Romero's supervisor asked the Defense Intelligence Agency

Central Adjudication Facility ("DIA-CAF") to grant Mr. Romero clearance to obtain access to SCI. Mr. Romero had been working as an auditor in the agency's Office of Inspector General since 1999. This position required him to maintain a Secret level security clearance, which he obtained in 1999 from the Washington Headquarters Service Central Adjudication Facility ("WHS-CAF"). After receiving his Secret security clearance but before requesting clearance for access to SCI, Mr. Romero married a Honduran national. At the time Mr. Romero sought access to SCI, his wife was an employee of the Honduran Embassy.

The eligibility standards for SCI access and Secret clearances are not identical, although there are common guidelines and procedures that do apply to both types of clearances. *See* Exec. Order 12968; DoD 5200.R-2, App. 8; Director of Central Intelligence Agency Directive ("DCID") 6/4. Under these common adjudicative guidelines, an investigating agency must consider thirteen factors in determining whether granting a security clearance is consistent with interests of national security. Each of these factors applies regardless of whether an employee seeks a Secret clearance or SCI access. Of particular relevance here is the "foreign influence" factor. Specifically, the "foreign influence" disqualifying factor states that a "security risk may exist when an individual's immediate family . . . and other persons to whom he or she may be bound by affection, influence or obligation are: (1) not citizens of the United States or (2) may be subject to duress." DoD 5200.2-R, App. 8. Conditions that may be disqualifying include having an immediate family member who is a citizen of a foreign country or having relatives who are connected with any foreign government. *Id.* The common guidelines also specify that foreign

influence-related security concerns can be mitigated under certain circumstances. *Id.*

Beyond these considerations, SCI access requires satisfying additional minimum personnel security standards that are not required for Secret and other lower-level clearances. *See* DCID 6/4. For example, DCID 6/4 specifies that in order to be approved for access to SCI, an individual "must be a US citizen [and] [t]he individual's immediate family must also be US citizens." Thus, any individual whose spouse is a citizen of a foreign country is barred under DCID 6/4 from obtaining clearance for access to SCI, although he may still be eligible for a Secret clearance if the foreign influence concern is adequately mitigated. If the foreign influence concern cannot be adequately mitigated, the individual may be denied both access to SCI and Secret clearance based on his spouse's citizenship.

B

The general organizational framework used by the DoD to make security clearance determinations is as follows. The DoD has authorized Central Adjudication Facilities ("CAF") in various components, including the DIA and the WHS, to issue security clearances. When a component's CAF denies or revokes a clearance, the determination may be appealed to that component's Security Appeals Board ("SAB"). Both the DIA and the WHS are authorized to grant, deny, or revoke civilian personnel security clearances including Secret clearances. In addition, the DIA also has the authority to grant, deny, or revoke access to SCI. The WHS-CAF generally handles Secret security clearances, while the DIA-CAF handles access to SCI. Under DoD regulations, a component may

"reciprocally accept" a security clearance determination made by another component. *See* DoD 5200.2-R § C4.

The first step in the process of obtaining access to SCI involves asking the appropriate CAF to adjudicate the clearance. Although the WHS-CAF was the component that issued Mr. Romero's original Secret clearance, the DIA-CAF is responsible for making determinations regarding eligibility to access SCI. Accordingly, Mr. Romero's employer requested that the DIA-CAF grant him SCI access. After conducting an investigation, the DIA-CAF informed Mr. Romero that a preliminary decision had been made to deny him clearance for access to SCI. *Romero I*, 527 F.3d at 1326. The preliminary decision also indicated that Mr. Romero's Secret security clearance would be suspended pending resolution of the matter. Pointing to the Honduran citizenship of Mr. Romero's wife and stepson, the preliminary decision explained that "available information tends to show a security risk may exist . . . due to foreign influence." The preliminary decision further noted that the foreign influence concerns were also inconsistent with SCI eligibility standards, which require that immediate family members must be U.S. citizens.

If an employee is not satisfied with the preliminary decision, the second step is to challenge the preliminary determination in writing. Mr. Romero responded to the DIA-CAF's preliminary decision. After considering the information supplied by Mr. Romero, the DIA-CAF's chief issued a final decision denying access to SCI and revoking Mr. Romero's Secret clearance due to security issues deemed to be inconsistent with national security interests. The final decision indicated that the potential security risks included "the fact that your spouse is not a U.S. citizen, and is an accredited diplomat of the Govern-

ment of Honduras." The final decision concluded that Mr. Romero had failed to mitigate foreign influence security concerns based on his wife's status as an agent of a foreign power.

As the third step in the process, the DIA-CAF's final decision may be appealed to the DIA's Security Appeals Board ("DIA-SAB"). Mr. Romero appealed the DIA-CAF's final determination by requesting a hearing before an administrative judge at the Defense Office of Hearing and Appeals ("DOHA"). The DOHA administrative judge recommended that the DIA-SAB sustain the DIA-CAF's revocation of Mr. Romero's Secret clearance. The DOHA administrative judge acknowledged that the agency did not have jurisdiction to consider whether an exception should apply to DCID 6/4's preclusion of individuals with foreign immediate family members from eligibility for access to SCI. The DOHA administrative judge therefore addressed only the issue of Mr. Romero's Secret security clearance. With respect to this latter issue, the DOHA administrative judge applied the common adjudicative guidelines and considered foreign influence based on Mr. Romero's relationship with his wife and stepson. After evaluating mitigating conditions, the DOHA administrative judge found that Mr. Romero's relationship with his stepson did not pose an unacceptable security risk. In contrast, the DOHA administrative judge found that Mr. Romero's wife's employment at the Honduran Embassy weighed against applying any mitigating conditions in Mr. Romero's favor. Accordingly, the DOHA administrative judge recommended that the DIA-CAF's decision to revoke Mr. Romero's Secret clearance be affirmed due to Mr. Romero's relationship with his wife.

The final step in the process is the DIA-SAB's review of the DOHA administrative judge's recommendation. In

a two-paragraph decision, the DIA-SAB affirmed the determination that Mr. Romero did not meet the eligibility requirements for access to SCI. The first paragraph of the decision concluded that Mr. Romero did not meet "the minimum personnel security standards for SCI." The second paragraph of the decision discussed the DOHA administrative judge's treatment of foreign influence security concerns, which as noted above, were addressed by the DOHA administrative judge in the context of the Secret clearance rather than SCI access. The DIA-SAB agreed that mitigating factors did not apply to Mr. Romero's relationship with his wife because she was by definition an agent of a foreign power. The DIA-SAB's decision did not explicitly mention any other security clearances besides access to SCI.

As discussed above, DoD regulations permit a component to reciprocally accept another component's security clearance determination without conducting further investigation. Accordingly, the WHS-CAF—the component that originally issued Mr. Romero's Secret clearance—reciprocally accepted the DIA-SAB's final decision denying Mr. Romero's eligibility for access to SCI. In addition, the WHS-CAF stated that Mr. Romero's eligibility "for access to classified information and to occupy a sensitive position has been revoked" based on the DIA-SAB's decision. Thus, the WHS-CAF accepted the denial of access to SCI and revoked Mr. Romero's Secret clearance based on the DIA-SAB final decision.

C

Because Mr. Romero's position required him to maintain a Secret level security clearance, he was removed from his position shortly after his Secret security clearance was revoked.

He appealed his removal to the MSPB, arguing that his Secret clearance had not been properly revoked. He alleged that the DoD had denied his right to due process because it did not provide him an opportunity to challenge the WHS-CAF's reciprocal revocation. *Romero I*, 527 F.3d at 1327. He also argued that the revocation of his Secret clearance was invalid because the DIA-SAB had denied only his eligibility for access to SCI. *Id.* He further argued that the revocation of his Secret clearance was retaliatory. *Id.* at 1329.

The MSPB administrative judge affirmed the agency's action. *Id.* at 1327. The administrative judge rejected Mr. Romero's due process argument because he had the opportunity to challenge the DIA-CAF's final decision and because the agency's regulations do not require an opportunity for review of a reciprocal acceptance of a security clearance revocation. *Id.* The administrative judge also held that Mr. Romero's Secret security clearance had been revoked, that his position required access to classified information, and that the agency's removal of Mr. Romero fully complied with the procedural requirements of 5 U.S.C. § 7513. *Id.* Explaining that the MSPB could not review the merits underlying a security clearance revocation, the administrative judge rejected Mr. Romero's remaining challenges because they required review of the merits of the decision to revoke his security clearance. *Id.* The full board denied Mr. Romero's petition for review of the administrative judge's initial decision. *Id.*

Mr. Romero appealed to this court. Citing *Hesse v. Department of State*, 217 F.3d 1372, 1376 (Fed. Cir. 2000), we acknowledged that the MSPB may not examine the underlying merits of the security clearance determination. *Romero I*, 527 F.3d at 1328. Accordingly, we held that the MSPB was correct to reject Mr. Romero's argu-

ment that the revocation of his security clearance was retaliatory because this argument implicated the merits of the security clearance decision. *Id.* at 1330. We also held that the MSPB did not err in concluding that the DoD's removal of Mr. Romero complied with the requirements of 5 U.S.C. § 7513 because (1) Mr. Romero was provided notice of his proposed removal, (2) the agency provided notice of the reasons for the removal and the underlying revocation of his security clearance, and (3) Mr. Romero had an opportunity to respond to the removal. *Id.* at 1329. Noting, however, that the MSPB had not addressed Mr. Romero's challenges to the procedures used to revoke his Secret security clearance, we remanded the issue to the MSPB to be addressed in the first instance. *Id.* at 1329-30 (vacating the MSPB's decision and remanding for the MSPB to determine "whether Mr. Romero can show that the Department failed to follow its procedures and that any failure to do so resulted in harmful error").

On remand to the MSPB, Mr. Romero focused on two main procedural objections: (1) The DIA-SAB lacked the authority to revoke the Secret clearance because it was the WHS-CAF that had issued the Secret clearance in the first place; and (2) The DIA-SAB had not actually revoked the Secret clearance, leaving no revocation for the WHS-CAF to reciprocally accept. After a two-day hearing, the MSPB administrative judge again affirmed the DoD's action. First, he concluded that the DIA-SAB had the authority to revoke Mr. Romero's Secret security clearance even though it was not the component that initially issued the clearance. He also concluded that the DIA-SAB final decision had in fact revoked Mr. Romero's Secret security clearance. The administrative judge reasoned that, although the DIA-SAB did not expressly reference the Secret clearance in the decision letter, its

discussion of the DOHA administrative judge's opinion—which focused almost exclusively on the Secret clearance—was evidence of agreement with revoking the Secret clearance. The administrative judge further found that the WHS-CAF was not required to independently adjudicate Mr. Romero's eligibility for a Secret security clearance following the DIA's decision. Finally, the administrative judge concluded that, even assuming the DoD had committed a procedural error, any such error was not harmful. He determined that Mr. Romero's Secret clearance would have been revoked in light of the security risk associated with Mr. Romero's wife's Honduran citizenship and status as an agent of a foreign power. He further concluded that Mr. Romero had received all of the process due under 5 U.S.C. § 7513 and "nearly all" of the protections set forth in 5 U.S.C § 7532, which provides for removals without appeal to the MSPB in the interest of national security.

The administrative judge's decision became the decision of the MSPB on April 29, 2010. This appeal followed. We have jurisdiction to review the MSPB's final decision under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

When we review a decision of the MSPB, we do so under a deferential standard as prescribed by statute. The MSPB's decision must be affirmed unless it is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation; or unsupported by substantial evidence. *Bennett v. Merit Sys. Prot. Bd.*, 635 F.3d 1215, 1218 (Fed. Cir. 2011) (citing 5 U.S.C. § 7703(c)). Like the MSPB, our review of removal actions that involve the revocation or denial of a security clear-

ance is limited to reviewing the procedures used rather than the substance of the revocation decision. *Romero I*, 527 F.3d at 1327-29 (discussing *Hesse* and *Department of the Navy v. Egan*, 484 U.S. 518 (1988)).

Recognizing the limited nature of our review of adverse employment actions involving security clearance determinations, this court's opinion in *Romero I* remanded to the MSPB for the limited purpose of determining whether the revocation of Mr. Romero's Secret clearance complied with DoD's own internal procedures. *Romero I*, 527 F.3d at 1328-30. On appeal, Mr. Romero contends that the MSPB committed legal error by misapplying the statutes and regulations defining procedures for security clearance determinations and engaging in erroneous speculation regarding the scope of the DIA-SAB's final decision. Specifically, he argues that the DIA-SAB did not explicitly revoke his Secret clearance. It follows, according to Mr. Romero, that the WHS-CAF could not revoke the Secret security clearance by reciprocal acceptance because there was no final determination to accept. Mr. Romero further argues that, even if the DIA-SAB had in fact revoked his Secret clearance, the DIA lacked the authority to do so because the WHS rather than the DIA was the component that issued the Secret clearance in the first place. Mr. Romero maintains that DoD regulations permit only the component that initially granted the security clearance to revoke it.[1]

---

[1]    Mr. Romero also makes several arguments based on the DoD's alleged failure to comply with the procedural requirements of 5 U.S.C. § 7513. These arguments are unavailing because *Romero I* expressly held that the MSPB did not err in finding that DoD had complied with the requirements of § 7513. *Romero I*, 527 F.3d at 1329.

The government responds that Mr. Romero did not meet his burden of showing that the DoD failed to follow its procedures and that the MSPB's determination to that effect was supported by substantial evidence. With respect to Mr. Romero's claim that the DIA lacked the authority to adjudicate his Secret clearance, the government counters that DoD regulations plainly permit DoD components like the WHS to designate other components to revoke security clearances and do not prohibit designees from revoking clearances originally issued by the designating component. Pointing to several departmental memoranda interpreting DoD 5200.2-R, the government further argues that denial of SCI access automatically acts as a revocation of collateral clearances such as Secret clearances. Finally, the government notes that common adjudicative guidelines apply to both SCI access and Secret clearances. The government submits that the DIA was required to apply these common standards in reviewing Mr. Romero's eligibility for access to classified information once he was nominated for SCI access. The government contends that the SCI access investigation identified a "foreign influence" security risk that could not be mitigated because of Mr. Romero's wife's status as an agent of a foreign power. This unmitigated foreign influence concern, according to the government, disqualified Mr. Romero both from eligibility for SCI access and collateral clearances such as a Secret clearance.

Accordingly, the central issues on appeal are whether the DIA-SAB made a final determination regarding Mr. Romero's Secret security clearance and whether the DIA rather than the WHS had the authority to revoke Mr. Romero's Secret clearance. We take each issue in turn.

A

We first consider the scope of the DIA-SAB final decision. The MSPB found that the DIA-SAB did revoke Mr. Romero's Secret security clearance. Indeed, the DIA-CAF initial decision, the DIA-CAF final decision, and the DOHA administrative judge's recommendation all squarely addressed Mr. Romero's access to "collateral classified information" (i.e., his Secret clearance) and concluded that Mr. Romero's Secret clearance should be revoked in light of the foreign influence concerns raised by his wife's status as an agent of a foreign power. In contrast, the DIA-SAB did not explicitly reference Mr. Romero's Secret clearance in its two paragraph decision. Because this last decision is controlling, Mr. Romero contends that his Secret security clearance was never revoked by the DIA. We disagree.

As discussed in detail above, the DOHA administrative judge acknowledged that having an immediate family member that is not a U.S. citizen is an automatic bar to SCI access under DCID 6/4. The DOHA administrative judge went on to consider the foreign influence standard, which applies to both SCI access and Secret security clearances. *See* DoD 5200.2-R, App. 8. The DOHA administrative judge concluded that Mr. Romero's relationship with his stepson did not present an unacceptable security risk but that Mr. Romero's relationship with his wife did present such an unmitigated risk. Accordingly, the DOHA administrative judge specifically recommended that the DIA-CAF's decision to revoke Mr. Romero's Secret clearance be sustained.

The first paragraph of the DIA-SAB's decision indicated that Mr. Romero did not meet "the minimum personnel security standards for SCI." The applicable

security standard under DCID 6/4 that Mr. Romero failed to meet was that he had an immediate family member that was not a U.S. citizen. The DIA-SAB affirmed the DOHA administrative judge's conclusion regarding this automatic bar. This determination standing alone is sufficient to affirm the DIA-CAF's denial of SCI access.

The second paragraph of the DIA-SAB's decision focused on foreign influence concerns. In light of the DIA-SAB's conclusion that Mr. Romero did not satisfy DCID 6/4's standards for access to SCI because of his wife's citizenship, the DIA-SAB did not need to reach foreign influence considerations if it was dealing exclusively with SCI access and not also with the Secret clearance. But the DIA-SAB did reach the issue. It addressed the DOHA administrative judge's analysis of foreign influence concerns and explicitly endorsed the DOHA administrative judge's conclusion that Mr. Romero's case presented foreign influence security issues that are inconsistent with national security interests. While such a determination applies to both access to SCI and Secret clearances, the DOHA administrative judge's analysis was conducted specifically in the context of Mr. Romero's Secret clearance. The DIA-SAB's treatment of the foreign influence security concern thus reached Mr. Romero's Secret clearance. The MSPB's finding that the DIA-SAB's final decision revoked the Secret clearance is supported by substantial evidence.

Mr. Romero contends that this result is unjust because different standards apply for access to SCI and eligibility for a Secret security clearance. While this is partially true, this argument misses the mark because there are standards under the common adjudicative guidelines that apply to both. Foreign influence concerns could have properly led to a denial of both a Secret secu-

rity clearance and access to SCI.  Here, Mr. Romero's wife's status as a foreign national automatically barred him from access to SCI under DCID 6/4.  That same relationship also raised issues under the common guidelines regarding foreign influence based on his wife's employment.  He was provided the opportunity to mitigate the foreign influence concerns, but the DOHA administrative judge and the DIA-SAB both concluded that his wife's status as an agent of a foreign power could not be overcome.  The DoD did not apply an improper, more stringent standard to the Secret clearance revocation determination.

B

We turn next to the question of which component(s) had the authority to revoke Mr. Romero's Secret clearance.  Mr. Romero contends that the DIA-CAF was prohibited by agency regulation form adjudicating his Secret clearance.  Pointing to DoD Reg. 5200.2-R § C7.1.2.3, Mr. Romero asserts that only the issuing component, here the WHS, has the authority to revoke his Secret clearance.[2]

---

[2]     Section C7.1.2.3. provides, in pertinent part, as follows:

> Personnel security clearances of DoD *military personnel* shall be granted, denied, or revoked only by the designated authority of the parent Military Department.  Issuance, reissuance, denial revocation of a personnel security clearance by any DoD Component concerning personnel who have been determined to be eligible for clearance by another component is expressly prohibited.  Investigations conducted on Army, Navy, and Air Force personnel by DIS will be returned only to the parent Service of the subject for adju-

The MSPB rejected this argument, holding that the prohibition described in this regulation applies only to military personnel and not to civilians. The MSPB's interpretation is consistent with the plain language of section C7.1.2.3. Even assuming that section C7.1.2.3 applies to civilian personnel, as contended by Mr. Romero, the MSPB concluded that section C7.1.2.3 plainly permits DoD components to designate other components to revoke security clearances. Indeed, the administrative record supports that the WHS can delegate the DIA to take the lead in adjudicating a security clearance issue when information that adversely affects that security clearance arises during the DIA's SCI access determination. The MSPB's conclusion that the DIA-CAF was authorized to revoke Mr. Romero's security clearance is correct as a matter of law and supported by substantial evidence.

Mr. Romero further argues that the WHS-CAF was required to independently adjudicate his eligibility for a Secret clearance after the DIA's decision. To the extent that Mr. Romero suggests that the WHS could not reciprocally accept the DIA's revocation of his security clearance, this contention is incompatible with DoD Reg. 5200.2-R § C4.1.3.1. To preclude components from engaging in duplicative adjudicative processes under the common guidelines, section C4.1.3.1 expressly states that "[a]djudicative determinations for . . . access to classified information (including those pertaining to SCI) made by designated DoD authorities will be mutually and reciprocally accepted by all DoD Components without requiring additional investigation." Thus, rather than requiring an independent adjudication by the WHS, section C4.1.3.1

---

dication regardless of the source of the original request.
(Emphasis added.)

directs the WHS to reciprocally accept the DIA's determination denying SCI access and revoking the Secret clearance without any additional investigation.

In sum, we conclude that the DoD did not violate its internal procedures. The MSPB's determination that the DIA-SAB's final decision reached both access to SCI and the Secret clearance is supported by substantial evidence. We further conclude that the WHS-CAF properly revoked Mr. Romero's Secret clearance by reciprocally accepting the DIA-SAB's resolution of the matter. Because Mr. Romero has not met his burden in establishing that the DoD failed to follow its own regulations in revoking his Secret security clearance, we do not further consider whether any such procedural deficiency resulted in harmful error. *Romero I*, 527 F.3d at 1330 & n.2. (remanding for the MSPB to determine whether Mr. Romero could show that the DoD failed to follow its procedures and that the procedural deficiency constituted harmful error).

CONCLUSION

The judgment of the MSPB is affirmed.

**AFFIRMED**

# United States Court of Appeals for the Federal Circuit

---

**WILFREDO ROMERO,**
*Petitioner,*

**v.**

**DEPARTMENT OF DEFENSE**
*Respondent.*

---

2010-3137

---

Petition for review of the Merit Systems Protection Board in consolidated case nos. DC0752070328-M-3 and DC0752060136-M-2.

---

DYK, *Circuit Judge*, concurring.

The Department of Defense ("DoD") regulations involved in the case are confusing even though clarity would best serve the interests of both the government and its employees. I nonetheless agree that, under the regulations, the Defense Intelligence Agency ("DIA") had the authority to act on Romero's Secret clearance and that, if it revoked the clearance, the Washington Headquarters Service ("WHS") could give reciprocal effect to this action. The question then becomes whether DIA took action to revoke the Secret clearance.

The panel majority concludes that, even though the DIA Security Appeals Board's ("DIA-SAB") decision

addressed only SCI access, the second paragraph of the decision should be read to reference Secret clearance because the denial of SCI access had already been addressed in the first paragraph.  I am dubious given the fact that the DIA-SAB decision makes no reference to Secret clearance but only to SCI access.  In my view, however, the revocation of the Secret clearance did not depend on explicit action by the DIA-SAB.

The decision to revoke or deny an employee's security clearance is made in the first instance by a DoD Central Adjudication Facility—in this case the DIA Central Adjudication Facility ("DIA-CAF"). The employee has a right to appeal the decision to the corresponding Security Appeals Board.  DoD 5200.2-R § C8.2.2.4.  The appeal may be conducted through "a personal appearance before [an administrative judge ("AJ")]" or via a written submission to the Security Appeals Board "stating reasons why the [decision to revoke or deny security clearance] should be overturned."  *Id.*  Where the employee opts to appear before an AJ, the AJ must submit "a written recommendation to the appropriate [Security Appeals Board] whether to sustain or overturn the [decision to revoke or deny security clearance]."  *Id.* § AP13.1.5.5.  The Security Appeals Board will then "render a final written determination" which "will conclude the appeal process."  *Id.* § AP13.1.6.  On appeal, the employee has the burden; thus, unless the earlier decision of the Central Adjudication Facility is overturned by the Security Appeals Board, it stands.

Here, the decision from the DIA-CAF clearly denied Romero's access to SCI and revoked his Secret clearance.  The decision stated that, because of potential security risks, Romero's "eligibility for access to SCI [was] denied and [his] access eligibility to collateral classified information [was] revoked effective [immediately]."  J.A. 47.  On

appeal, Romero opted to appear before an administrative judge, who recommended that the DIA-SAB sustain the DIA-CAF's revocation of Romero's Secret clearance. After reviewing the AJ's recommendation, the DIA-SAB affirmed the earlier decision of the DIA-CAF. Although the DIA-SAB did not specifically reference the Secret clearance in its decision on appeal, it is clear that the DIA-SAB did not reverse or vacate the earlier DIA-CAF decision. As a result, DIA-CAF's decision to revoke Romero's Secret clearance stands, and could properly be given reciprocal effect by the WHS. In other words, the failure of the DIA-SAB to explicitly discuss the Secret clearance issue does not, in my view, require that the revocation be set aside. I accordingly agree with the result reached by the panel majority.