NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JAMES THOMAS RYAN,**
*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent*

---

2018-1524

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-17-0673-I-1.

---

Decided: February 13, 2019

---

JOHN SILVERFIELD, Garden City, NY, for petitioner.

P. DAVIS OLIVER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by ELIZABETH MARIE HOSFORD, ROBERT EDWARD KIRSCHMAN, JR., JOSEPH H. HUNT; ELIZABETH PAVLICK, Office of General Counsel, Washington Headquarters Services & Pentagon Force Protection Agency, United States Department of Defense, Washington, DC.

---

Before LOURIE, BRYSON, and MOORE, *Circuit Judges.*

PER CURIAM.

James Ryan appeals from a decision of the Merit Systems Protection Board ("the Board") sustaining three charges against Ryan for lack of candor, conduct unbecoming a police officer, and unauthorized use of a computer, and removing him from service as a police officer in the Pentagon Force Protection Agency ("PFPA"). *See Ryan v. Dep't of Def.*, No. DC-0752-17-0673-I-1 (M.S.P.B. Nov. 15, 2017). Ryan disputes whether substantial evidence supports each of the conclusions of the Board's Administrative Judge ("AJ") with respect to these charges, and he further argues that the AJ failed to find a nexus between the adverse action and his service and that the AJ's action violated his rights under the Due Process Clause and the Whistleblower Protection Act ("WPA"). Because we conclude that substantial evidence supports the AJ's findings and that Ryan's other arguments lack merit, we *affirm*.

## I.   BACKGROUND

Ryan was employed as a police officer with the PFPA from February 2009 until his removal on June 6, 2017. In 2015, Ryan filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), concerning his employment with the PFPA, which is not at issue in this appeal. In the course of that proceeding, Ryan was required to sign a Notice of Rights and Responsibilities for the EEOC complaint process. By signing the notice, Ryan was given access to a Report of Investigation ("ROI") from the EEOC, which contained the personnel file of another police officer ("SV"). The ROI included the following warning:

> v. The ROI contains personal data and is to be treated in a confidential manner. **You may not show your copy of the ROI, in whole or in part, to a third party except your designated representative.** Violations of privacy safeguards

may result in disciplinary action, a fine of up to $5,000, or both (Public Law 93-576[1]).

J.A. 148.

Ryan did not heed this warning. Instead, he sent a copy of SV's personnel file to eight members of the PFPA, as well as the PFPA Office of Professional Responsibility, as an attachment to an October 12, 2016, memorandum in which he asserted that SV received a fraudulent cash bonus of $2,050 from a sergeant "in exchange for allowing [SV's duty post] to become a location for unauthorized congregating, food delivery, and eating to take place." J.A. 417. Ryan had previously reported SV and others on separate occasions for such unauthorized congregating around SV's duty post.

In the memorandum, Ryan denigrated SV's performance based on Ryan's own observations, SV's personnel file, and records of SV's incident reports stored in the PFPA's Record Management System ("RMS"), which Ryan had accessed. However, Ryan never provided any evidence of this purported *quid pro quo* beyond his complaints about SV's performance and allegedly undeserved bonus and positive evaluation from the sergeant.[2]

In response, the PFPA issued a notice of proposed removal to Ryan on February 7, 2017. The PFPA asserted that the removal was justified because, among other charges, Ryan: (1) lacked candor by making an untrue and unsupported allegation about SV and the sergeant; (2)

---

[1] The ROI's citation of the Privacy Act of 1974 contains a minor error and should have read "Public Law 93-579." *See* Privacy Act of 1974, Pub. L. No. 93-579, 5 U.S.C.A. § 552a (West through Pub. L. No. 115-281).

[2] Importantly, Ryan admitted he never reviewed SV's Officer Performance Rating, which was the basis for SV's performance rating and bonus.

violated the law and departmental policy by distributing
SV's personnel file, which is conduct unbecoming a police
officer; and (3) misused a government computer by access-
ing SV's police reports in the RMS system without author-
ization. The deciding official ("DO") sustained the charges
at issue in this appeal and removed Ryan from service on
June 6, 2017.

Ryan then appealed to the Board. The AJ credited the
DO's testimony and therefore sustained the charges and
Ryan's removal. The AJ also rejected Ryan's affirmative
defense under the WPA. While Ryan did not present an
argument that his removal violated his due process rights,
the AJ credited certain statements at the hearing as rais-
ing the issue. Specifically, Ryan alleged at the hearing that
the DO's personal knowledge that another of Ryan's accu-
sations—that two other PFPA officers abuse alcohol while
off-duty—was baseless constituted *ex parte* information to
which Ryan must be given notice. *See Stone v. FDIC*, 179
F.3d 1368, 1376–77 (Fed. Cir. 1999) (holding that a DO's
consideration of an *ex parte* communication may violate an
employee's right to due process where it introduces new
and material evidence). The AJ rejected Ryan's due pro-
cess argument because the specification directly concern-
ing this accusation was withdrawn by the PFPA and, with
respect to the sustained charges, the *ex parte* information
was both immaterial and cumulative to the remainder of
the record.

The AJ's decision became the decision of the Board be-
cause Ryan did not appeal to the full Board, which at that
time lacked a quorum. This appeal followed. We have ju-
risdiction under 28 U.S.C. § 1295(a)(9).

## II. DISCUSSION

The scope of our review of an appeal from a decision of
the Board is limited. We must affirm the Board's decision
unless we find it to be "(1) arbitrary, capricious, an abuse
of discretion, or otherwise not in accordance with law;

(2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). A finding is supported by substantial evidence if a reasonable mind might accept the evidence as adequate to support the finding. *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Credibility determinations are within the discretion of the Board and are "virtually unreviewable" on appeal. *King v. HHS*, 133 F.3d 1450, 1453 (Fed. Cir. 1998). The burden of establishing reversible error in a Board decision rests upon the petitioner. *See Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

We address Ryan's challenges to the sufficiency of the evidence, his due process challenge, and his affirmative defense under the WPA in turn.

A.

Ryan raises many arguments that the AJ's decision to sustain all three charges was unsupported by substantial evidence. Ryan's principal argument with respect to the lack of candor charge is that neither the DO nor the AJ ever made a finding that Ryan intended to deceive the recipients of his memorandum, or that he knew his allegation was incorrect. Further, Ryan contends, our precedent confines lack of candor charges to investigations or inquiries, rather than unsupported allegations. *See, e.g., Ludlum v. Dep't of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002).

The government responds that the concept of lack of candor is defined more broadly by our case law and is not restricted, as Ryan would have it, to statements made during investigations or inquiries. In the government's view, Ryan lacked candor because he knew both that he had no evidence to support his assertion of a *quid pro quo* and that he could not support his allegation that SV's evaluation was "fraudulently inflated" because he admitted that he had never read SV's Officer Performance Record.

We agree with the government because our precedent, including *Ludlum*, is clear that lack of candor is a "flexible concept whose contours and elements depend upon the particular context and conduct involved." *Id.* at 1284 (analogizing lack of candor to "the failure to state a material fact [in a securities registration statement] . . . necessary to make the statements therein not misleading" actionable under the Securities Act of 1933). Hence, we reject Ryan's argument that lack of candor can only be charged where an employee failed to be forthright in the course of an investigation or inquiry. In fact, *Ludlum's* holding that a lack of candor may be charged where an employee fails to state a material fact necessary to make a statement not misleading is strikingly applicable to Ryan's failure to provide any evidence in support of his provocative assertion.

We further determine that Ryan has not shown that the AJ's finding was unsupported by substantial evidence. Ryan argues that neither the DO nor the AJ made the requisite finding of an intent to deceive, and in fact conceded that Ryan may have believed that SV received an inflated rating. But Ryan's opinions about SV's performance are ultimately beside the point. Ryan chose to assert the existence of a *quid pro quo* between the sergeant and SV without any evidence. While Ryan now argues that his intuition as a police officer provides the requisite evidence, he did not so qualify his allegation in his memorandum. Instead, Ryan represented the alleged exchange as fact, and the AJ reasonably found that by making an allegation he knew was unsupported, Ryan intended to deceive the recipients of the memorandum. Thus, substantial evidence supports the AJ's finding that Ryan lacked candor.

Ryan also argues that the conduct unbecoming charge was unsupported by substantial evidence because disseminating SV's personnel file was not conduct unbecoming a police officer, which Ryan alleges is defined in PFPA's internal regulations as including "that which impairs the operation or efficiency of the department or employees."

Appellant Br. 26. In addition, Ryan asserts that the conduct unbecoming charge cannot lie because the DO admitted that Ryan's position as a police officer did not affect his analysis of the charge. Finally, Ryan argues that he was not aware that he was unauthorized to distribute SV's personnel file.

In response, the government argues that a conduct unbecoming charge can be proven without reference to a specific regulation and that the AJ correctly found that Ryan's conduct renders him unsuitable to remain a PFPA police officer. The government also contends that Ryan was aware that he was unauthorized to distribute SV's personnel file.

We find Ryan's arguments unavailing. Ryan signed an EEOC notice which clearly warned him that distribution of SV's personnel file was a violation of the Privacy Act of 1974, and PFPA Order 1000.3 makes clear that "[v]iolation of any law, regulation or order may be grounds for disciplinary action." J.A. 552. Both the DO and the AJ were thus entitled to credit testimony that Ryan's cavalier attitude toward the Privacy Act and EEOC rules rendered him a liability to the PFPA, where officers must abide by similar laws to perform their jobs. Furthermore, the record is clear that Ryan was aware that he was barred from sharing SV's personnel file. *See* J.A. 1290 ("[The EEO Director] said you cannot share other people's information."). Thus, Ryan has not shown that the AJ's finding that he committed conduct unbecoming a police officer was unsupported by substantial evidence.

With respect to the third charge, unauthorized use of a government computer, Ryan argues that his searching SV's police reports was authorized because he generally has access to the RMS system and allegedly was told during training that he could search the system "merely to satisfy [his] curiosity." J.A. 1365. Thus, in Ryan's view, the

government never showed that his use of a government computer to search SV's police reports was unauthorized.

The government responds that the AJ was entitled to credit the DO's testimony that Ryan's use of the RMS system to assist his personal investigation into SV was unauthorized because it had nothing to do with his duties as a police officer. The government further argues that the AJ had substantial evidence to find that Ryan was not allowed to search the system just to satisfy his curiosity.

We agree with the government and conclude that the AJ was entitled to credit the DO's testimony. As Ryan confirmed, the RMS system requires an officer to agree that his use of the system is authorized and Ryan admitted that he agreed in order to log in to the RMS system. Thus, the AJ's finding that Ryan misused a government computer was supported by substantial evidence.

Ryan finally argues that the DO failed to show the required nexus between these charges and Ryan's ability to perform his job satisfactorily. Ryan contends that the DO based the finding of nexus on his perception of Ryan's trustworthiness during the appeal process, rather than on the grounds themselves.

The government responds that the AJ properly credited the DO's testimony that the charges themselves, rather than Ryan's conduct on appeal, showed Ryan's untrustworthiness and poor judgment. The government further points to the DO's consideration of *Giglio v. United States*, 405 U.S. 150 (1972), for the proposition that the lack of candor charge in particular implicates Ryan's ability to testify in court. The government therefore argues that Ryan's lack of candor charge impairs his ability to perform an essential function of his job.

We conclude that Ryan has failed to show that the AJ's finding of a nexus between the charges and Ryan's ability to perform his job was unsupported by substantial

evidence.  The AJ was entitled to credit the DO's testimony, which as a whole clearly demonstrates a thoughtful rationale why the charges against Ryan, not his conduct during the appeal process, prevent him from fulfilling the duties of a PFPA police officer.  *See* J.A. 1431 (explaining that the DO found in his decision on Ryan's removal that Ryan "can't be trusted with sensitive information," "has poor judgment," and "can't be trusted to testify," creating *Giglio* problems).

B.

Ryan next raises two arguments that his due process rights were violated in the course of the proceedings before the AJ:  (1) he was not able to make a meaningful reply because the DO admitted that he did not consider one of the earlier disclosures Ryan made concerning the improper activity at SV's duty post, even though Ryan mentioned it in his oral reply; and (2) the DO admitted that he formed an impression of Ryan as dishonest because he had personal knowledge that led him to disbelieve Ryan's accusation that two other officers abused alcohol off-duty.  While the relevant charge was withdrawn by the agency, Ryan argues that the DO's personal knowledge should have been disclosed as new and material *ex parte* information before Ryan made his reply to the DO and that the AJ did not have substantial evidence to conclude that the information was not new and material to the charges at issue.

The government responds that the first argument was not made to the AJ and is waived.  It argues that the second argument was properly rejected by the AJ because the *ex parte* information was not new and material and did not affect the DO's decision to sustain other charges against Ryan.

Ryan failed to make his first argument to the AJ, and it is therefore waived.  *See Wallace v. Dep't of the Air Force*, 879 F.2d 829, 832 (Fed. Cir. 1989).  With respect to the second argument, we agree with the government that

substantial evidence supports the AJ's finding that the *ex parte* information considered by the DO was not new or material and therefore did not deprive Ryan of his due process right.

Ryan is a federal employee as defined by 5 U.S.C. §§ 7501, 7511(a)(1). He therefore has a constitutionally-protected property interest in his employment with the federal government. *See King v. Alston*, 75 F.3d 657, 661 (Fed. Cir. 1996). Before being deprived of this property interest, a public employee has a right under the Due Process Clause to be given "notice and an opportunity to respond." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). We have held that an *ex parte* communication that introduces "new and material information to the [DO] will violate the due process guarantee of notice." *Stone,* 179 F.3d at 1377. In deciding whether information is new and material, we look to several factors, including: (1) whether the *ex parte* communication merely introduces "cumulative" information or new information; (2) whether the employee knew of the error and had a chance to respond to it; and (3) whether the *ex parte* communications were of the type likely to result in undue pressure upon the DO to rule in a particular manner. *Id.*

Here, the government is correct that substantial evidence supports the AJ's finding that the *ex parte* information was not new or material to the charges at issue. Ryan argues he was prejudiced because the DO's personal knowledge—that Ryan's accusation about his coworkers' drinking habits was false—carried over into his decision on the other specifications for Ryan's lack of candor. The record does not support Ryan's argument. While the DO did admit that he was unable to forget that Ryan had made this accusation, he twice averred in the same exchange that Ryan's charged conduct alone was sufficient to sustain the charges at issue. *See* J.A. 1462 ("If we threw [Ryan's accusation] away, I would have still upheld the lack of candor because of the lack of evidence, through unsubstantiated

assertions. It's pretty black-and-white."). Ryan has not shown that the AJ erred by crediting this testimony, in conjunction with the remainder of the record, as substantial evidence that the DO's personal knowledge was not new and material *ex parte* information.

## C.

Finally, Ryan argues that the AJ erred by rejecting his affirmative defense under the WPA. In Ryan's view, his disclosure of the illegal *quid pro quo* between the sergeant and SV was a contributing factor to his removal because his memorandum was cited in the notice of proposed removal. Ryan argues that this showing has satisfied his burden to establish a *prima facie* case of retaliation; thus, the AJ should have then shifted the burden to the government to rebut this showing. Ryan further argues that his disclosures were made in good faith and that he had a reasonable belief that his disclosure evidenced a violation of a rule or regulation.

The government responds that the WPA only protects a government employee for disclosures he "reasonably believes evidence" a violation of a law, rule or regulation, gross waste, an abuse of authority, or a danger to public health or safety. 5 U.S.C. § 2302(b)(8)(A). The government further argues that substantial evidence supports the AJ's decision to credit the DO's testimony that Ryan's previous disclosures were not a contributing factor to his removal.

We agree with the government that the AJ correctly held that Ryan's disclosures do not qualify his actions for protection under the WPA. To receive the protection of the WPA, an employee must establish by a preponderance of the evidence that he made a protected disclosure. *See Horton v. Dep't of Navy*, 66 F.3d 279, 282 (Fed. Cir. 1995). A disclosure is protected only if the employee has a reasonable belief that the disclosure reveals a type of misbehavior described in § 2302(b)(8)(A). Ryan argues that his memorandum is protected by virtue of its revelation of an illegal

exchange between the sergeant and SV, but we conclude
that the AJ reasonably found, based on the factual record
and the testimony of both Ryan and the DO, that this ac-
cusation had no reasonable basis.

In his memorandum, Ryan asserted the existence of an
illegal *quid pro quo*, but he has not provided any evidence
of such a deal, either on appeal or previously.  Therefore,
he had no reasonable basis to believe that his memoran-
dum revealed the type of misbehavior described in
§ 2302(b)(8)(A).  *See Lachance v. White*, 174 F.3d 1378,
1381 (Fed. Cir. 1999) (holding that a belief is reasonable
when "a disinterested observer with knowledge of the es-
sential facts known to and readily ascertainable by the em-
ployee [could] reasonably conclude that the actions of the
government evidence [a violation]" and that the "purely
subjective perspective of an employee is not sufficient").
The WPA does not give employees *carte blanche* to an-
nounce that their coworkers have committed serious legal
violations based purely on speculation—let alone to ignore
privacy laws and abuse their access to government records
in doing so.  Thus, Ryan has not shown that the AJ's find-
ing that his disclosure was not protected by the WPA was
unsupported by substantial evidence.

We further agree with the government that substan-
tial evidence supports the AJ's finding that Ryan's previous
disclosures of unauthorized congregating at SV's duty post
did not contribute to his removal.  Neither of these disclo-
sures was cited in the notice of proposed removal, nor did
they involve Ryan asserting an illegal exchange between
the sergeant and SV, violating the Privacy Act, or misap-
propriating government records.  Furthermore, the DO tes-
tified that he was unaware of one of the disclosures and
welcomed the other.  The AJ was entitled to credit the tes-
timony of the DO, *see Hambsch v. Dep't of the Treasury*, 796
F.2d 430, 436 (Fed. Cir. 1986), and reject Ryan's argument
that these disclosures contributed to his removal.  Ryan

has thus not shown that the AJ's finding was unsupported by substantial evidence.

## III. CONCLUSION

We have considered Ryan's other arguments but find them unpersuasive. For the foregoing reasons, we *affirm* the decision of the Board.

**AFFIRMED**